**Raymond E. DAVIS, Plaintiff,**

v.

**ALABAMA POWER COMPANY, Defendant.**

**Civ. A. No. 72-G-1123-S.**

United States District Court,
N. D. Alabama, S. D.

Sept. 11, 1974.

Wayman G. Sherrer, U. S. Atty., Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., for plaintiff.

H. Hampton Boles, Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Raymond E. Davis, in this non-jury proceeding, is a World War II armed forces veteran who temporarily left his employment with the defendant, Alabama Power Company, to serve his country during war time. This plaintiff asserts, pursuant to the Military Selective Service Act,[1] that the

---

1. 50 U.S.C.App. § 459 (§ 8 of original act) in pertinent part provides:

 (b) Reemployment rights

 In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing

period of time spent in the service of his country should be held, by this court, to be "accredited service" for purposes of computing retirement pension benefits under the defendant's retirement program.

The defendant, Alabama Power Company, on the other hand, ardently maintains that: (1) because the company's pension policy denies all other employees, who were on furlough or leave of absence without regular pay, the right to accredited service, that it would be contrary to the company's overall policy to bestow accredited service to those called to serve their country where no actual work had been done for the company during such period of service; (2) it would be unconstitutional to require the defendant to grant the plaintiff increased retirement income based upon a period of time in which the plaintiff performed no work; (3) the plaintiff's claim for relief is barred by the one-year Alabama statute of limitations, Ala.Code

(Recomp.1958), tit. 7, § 26, or by the six-year Alabama statute of limitations, Ala.Code (Recomp.1958), tit. 7, § 21, or by the equitable doctrine of laches.

## STATEMENT OF FACTS

The pertinent facts, which were stipulated by the parties and the uncontradicted testimony of the one witness, are as follows:

The plaintiff commenced his employment with the defendant on August 16, 1937; after having worked for the defendant for a period of seven years, the plaintiff, on March 18, 1943, temporarily left that employment to serve the cause of his country in the military. The plaintiff honorably served our nation and was discharged on October 1, 1945. On October 8, 1945, the plaintiff was reinstated with the defendant and continued that employment until he retired on June 1, 1971. Thus, the time period involved in this suit is the two-year, six-month and 20-day period in which

after discharge for a period of not more than one year—

* * * * *

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

* * * * *

(c) Service considered as furlough or leave of absence

(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

(3) Any person who holds a position described in paragraph (A) or (B) of subsection (b) [of this section] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces of the United States.

this World War II veteran plaintiff temporarily left the employment of the defendant to serve in the defense of his country. The plaintiff is presently receiving $198.95 per month under the defendant's retirement pension program; however, if this court determines that the Military Selective Service Act, 50 U.S.C.App. § 459, entitles the plaintiff to receive "accredited service" for his time in the service, plaintiff will be entitled to $216.06 per month; an increase per month of $17.11. If the plaintiff's seniority status is so determined, he will be entitled to an appropriate award to compensate him for the loss of this amount from past pension payments, and to a mandatory injunction requiring the defendant to increase his present pension payment from $198.85 per month to $216.06 per month, as to all future installments on his pension.

The defendant established its pension program for its employees on July 1, 1944, and the plan has been amended from time to time pursuant to negotiations between the defendant and the various local unions of the International Brotherhood of Electrical Workers since 1950, including Local No. 841 of which the plaintiff was a member at the time of his retirement. The pension plan has been a part of collective bargaining agreements between the defendant and the various local unions of the International Brotherhood of Electrical Workers since July, 1961, including Local No. 841.

The pension plan provides that all full-time regular employees of the defendant who have completed one year of service with the defendant and have attained the age of 25 years are included in the pension plan. Employees other than full-time regular employees, such as part-time employees and emergency employees, are not included in the pension plan and are not eligible to accrue "accredited service." According to directives and practices of the defendant, a full-time regular employee of the

defendant is an employee who is employed on a full-time basis for an indefinite period of time. A full-time regular work week of the defendant consists of 40 hours per week, and regular daily work consists of eight scheduled hours work per day. Furthermore, under the defendant's pension plan, in the computing of "accredited time" the pension plan makes immaterial the number of overtime hours or overtime days the employee may have worked during his career, as none of this actual work time is taken into account in computing "accredited service." "Accredited service" does include, pursuant to collective bargaining agreements and employment practices and policies of the defendant, the following:

(1) From two weeks to five weeks annual vacation, the length of such vacation depending upon the length of the employee's service;

(2) Eight holidays per year;

(3) Annual sick leave up to 10 work days per year, or accumulation of a maximum of 30 work days;

(4) Up to three work days as a result of death in the immediate family of an employee; and

(5) Up to a maximum of nine months extended sick leave with pay, or up to 12 months by reducing the pay per month to the equivalent of six months at full pay and six months at half pay. (Such extended sick leave is discretionary with defendant and is pro-rated downward for employees with less than 20 years of service with defendant.)[2]

With respect to the exclusion of military service by the defendant from its pension plan, except as provided by the amendment of January 1, 1966 (which is not applicable to the plaintiff) the defendant has excluded all periods of leave of absence without regular pay and periods of military service in the computa-

2. Each of these inclusions involves time in which no work was performed.

tion of "accredited service" for the purpose of the pension plan.[3]

The plaintiff's status and benefits under the defendant's pension plan were reviewed with the plaintiff by the defendant on September 11, 1967, at which time the plaintiff was advised by the defendant that it would not include as a part of its computation of pension benefits the period of time he spent in the military service as "accredited service." The method of computation used to determine the plaintiff's retirement benefits is found in Section V.4(a) and (b) of the pension plan. This method is the so-called "minimum Retirement Income" method which takes into account two operating factors: (1) the employee's rate of earnings as of his retirement date; and (2) his years of "accredited service."

The amount of contributions to the pension plan trust fund is determined by the defendant or its agents annually on an actuarial basis, taking into account the factors which include: (1) the number of full-time regular employees who are covered by the plan; (2) their accredited service; and (3) their earnings. Further, the defendant maintains that the pension plan trust fund was not funded to pay retirement income based upon the inclusion of military service as accredited service other than as provided by Section III of the plan.[4]

## CONCLUSIONS OF LAW

The legal issue before the court is simply whether 50 U.S.C.App. § 459(b) and (c) require this defendant employer to include the plaintiff's time spent in the military service in its computation of benefits under the defendant's retirement pension plan. More basically, this court must determine whether the retirement benefits under the defendant's pension plan were perquisites of "seniority" or merely in the nature of "other benefits" under Section 9(c)(1) [50 U.S.C.App. § 459(c)(1)] of the act.[5] If

---

3. Section II. 2. of the defendant's pension plan provides:

2. Persons in Military Service and Employees on Authorized Leave of Absence. Any person not already included in the Plan who leaves or has left the employ of the Company to enter the Armed Forces of the United States or is on authorized leave of absence without regular pay and who returns to the employ within a reasonable time after discharge from such service (which reasonable time shall not in any event be construed to be less than 90 days or such longer period as may be fixed by law) or at or before termination of his leave of absence, shall, upon such return, be included in the Plan if and when he has met the requirements of subsection 1 of this Section. *In determining continuity or immediacy of service referred to in such subsection, the period of such absence in the Armed Forces of the United States or on such authorized leave of absence without regular pay shall be deemed not to have existed* . . . (Emphasis added.)

Section III. 2. provides:

2. Crediting of Past Service. Past Service, if any, as defined in Section I, shall be credited to all employees included in the Plan (a) who were so included on July 1, 1944, (b) who were on the payroll on July 1, 1944 and subsequently were included in the Plan without lapse of employment since

July 1, 1944, or (c) who were on authorized leave of absence without regular pay or in the Armed Forces on July 1, 1944 and were included in the Plan on or after their return to the employ of the Company as provided in Section II hereof. *Employees designated in (c) above shall not be credited with Past Service for the period of such leave of absence or service in the Armed Forces, except as provided in subsection 3(a) of this Section III.* No other employee included in the Plan shall be entitled to such Past Service. (Emphasis added.)

4. Section III of the plan does not apply to the plaintiff.

5. If the retirement pension is to be considered as "other benefits," the stipulated facts in this case would mandate a holding for the defendant under § 459(c)(1), because that section allows the returning veteran "insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, . . ." The rules of the defendant company have at all material times denied rights in "insurance or other benefits," as distinguished from seniority rights to employees on furlough or leave of absence.

the rights of the plaintiff, under the defendant's pension plan, are seniority rights, it is clear that the time he spent in the service of his country must be included in the computation of the amount of his pension payments. 50 U.S.C.App. § 459(b) and (c);[6] Accardi v. Pennsylvania R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966).

The defendant, Alabama Power, contends that its pension plan is not a seniority benefit but rather a retirement program based on the amount of *work actually performed* for the company, and thus is an "other benefit" which is not subject to the Military Selective Service Act. The finding of this court thus rests upon whether or not this pension plan is based upon the actual amount of work performed for the defendant company, or whether this pension plan is simply a perquisite of "seniority."

## SENIORITY RIGHTS

■ This court takes note that because the act does not define the term "seniority," veterans have had to turn to the courts for a definition of seniority rights.[7] The courts have had to proceed, case by case, to delineate the concept of "seniority" within the spirit of the act, without a rigid classification of seniority rights by collective bargaining agreements or employer interpretation of what seniority rights should or should not consist of.

While collective bargaining contracts have been consulted by the Supreme Court, the rule devised by the Supreme Court in interpreting individual contracts once a benefit has been determined to be a perquisite of seniority has always been:

This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need . . . And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275 at 285, 66 S. Ct. 1105 at 1111, 90 L.Ed. 1230 (1946).

The problem of the definition of "seniority" was addressed again by the Supreme Court in Accardi v. Pennsylvania R. Co.:

The term "seniority" is nowhere defined in the Act . . . [it] . . . is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 act. That intention was to preserve for the returning veterans the *rights and benefits* which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country. 383 U.S. at 229, 230, 86 S.Ct. at 771. (Emphasis added.)

The defendant's pension plan makes immaterial the number of overtime hours, days, weeks, months or years which the employee may have worked during his career. None of this actual

<hr/>

**6.** This is so because § 459(b) requires that upon return from military service the veteran must "be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; . . ." If the amount of this veteran's retirement pension is a matter of seniority, he could only be restored to "like seniority" if the years ·in service were included in the computation. This is especially true when the language of § 459(c) is considered, as follows: ". . . be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

**7.** Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) ; Oakley v. Louisville & N. R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949) ; Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 (1955) ; Tilton v. Missouri P. R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964) ; Accardi v. Pennsylvania R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966).

work time is taken into account in computing "accredited service."

After a thorough review of defendant's pension program, this court is of the considered opinion that this plaintiff was not treated as though he had been continuously employed. No provision has been made in the pension plan for computation of pension benefits based upon "units of work." In fact, the agreed facts show that the total time of employment is what is material in the computation, and not the actual amount of work performed during said total time of employment.

There can be no question that the computation is essentially based upon seniority, since it is based entirely upon time, and not at all upon the amount of work actually performed for the company. Time is the essence of seniority and that is what seniority computation is all about.

█ The intention of Congress was to recognize the existence of seniority systems and seniority rights, and Congress sought to preserve the veteran's rights under those systems and to protect him against loss of seniority benefits by reason of his absence. In *Fishgold*, the Supreme Court observed:

Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. 328 U.S. at 284–285, 66 S.Ct. at 1111.

This "escalator" principle [8] was reaffirmed by the Supreme Court in Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S. Ct. 982, 91 L.Ed. 1328 (1947); and restated in Oakley v. Louisville & N. R. Co., 338 U.S. 278 at 283, 70 S.Ct. 119 at 122, 94 L.Ed. 87 (1949).

[A]n honorably discharged veteran, covered by the statute, [is] entitled by the Act to be restored not to a position which would be the precise equivalent of that which he had left when he joined the Armed Forces, but rather to a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment.

There can simply be no doubt that the plaintiff in this case could not be said to have been moved back to his proper place on the "escalator" as to his retirement rights and benefits if his time in the military service were not included in the computation of his retirement pension. Otherwise this plaintiff would lose ground by reason of his absence.

The Supreme Court has warned that "seniority" is not an inflexible concept:

In providing that a veteran shall be restored to the position he had before entering the military service "without loss of seniority," § 8 of the Act [50 U.S.C.A. App. § 459] uses the term "seniority" without definition. It is thus apparent that Congress was not creating a system of seniority but recognizing its operation as part of the process of collective bargaining. We must therefore look to the conventional uses of the seniority system in the process of collective bargaining in order to determine the rights of seniority which the Selective Service Act guaranteed the veteran. Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 526, 69 S.Ct. 1287 at 1290, 93 L.Ed. 1513 at 1518 (1949).

8. The "escalator" principle has been incorporated into the Act as subsection 9(c)(2) [50 U.S.C. App. § 459(c)(2)]

It is declared to be the sense of Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so re-

stored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

This court is of the considered opinion that great emphasis is to be placed upon the "real nature" of the pension benefits in the case at bar, and it concludes that the purpose of this retirement benefit is to promote personnel stability by giving employees an incentive to remain with the company. Seniority is not an abstract right or position. Rather, seniority is a measurement by which other rights are determined; advancement, promotion, higher pay, vacations and vacation pay, layoffs, supplemental employment benefits, severance pay, and in the present case, retirement and pension benefits. The employee should be able to rely on receiving pension benefits based upon seniority, including the time spent in the military forces. Such a reliance right does not favor this veteran plaintiff over the nonveteran or grant him any super-seniority. *Fishgold, supra.* Rather, the right of the veteran to have his military time computed as accredited service guarantees equal competitive status with those employees who did not respond to the call of their country.

This court is led to the inescapable conclusion that, as was stated by our Supreme Court in *Accardi*:

> The requirements of the . . . Act are not satisfied by giving returning veterans seniority in some general abstract sense and then denying them the perquisites and benefits that flow from it. We think it clear that the amount of these [separation] allowances is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall. 383 U.S. at 230, 86 S.Ct. at 772.

■ The statutory purpose of the act must be borne in mind at all times so that an employer is not permitted by contract, contrivance or otherwise to remove a large segment of his employees from the scope of the act and thus evade this basic policy. Dame v. C. A. Batson Co., 157 F.Supp. 862 (D.C.Mass.1957). For this court to deny accredited service to this plaintiff under these circumstances for the time in which he was in the service of his country would be rejection of the holding of still another Supreme Court case, Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), stating the basic principle that " * * * he who is 'called to the colors is not to be penalized on his return by reason of his absence from his civilian job.' " [9]

> In these times of relatively high wages and steep income taxes, unions bargain vigorously for indirect compensation in the form of a host of diverse benefits. Whether the benefits are elements of "seniority" or "other benefits," the veteran's stake in them must be protected if they would automatically accrue to him but for induction. Clearly, the exclusion of veterans from benefits that have come to be regarded as essential perquisites of employment is inconsistent with the Universal Military Training and Service Act. Hollman v. Pratt & Whitney Aircraft, 435 F.2d 983 at 989 (5th Cir. 1970).

■ The Secretary of Labor is charged with the administration of the veterans' reemployment rights statutes and published in 1970 the "Veterans' Reemployment Rights Handbook." As indicated in the preface thereto, the Secretary does not have authority to issue binding administrative rulings, but the courts have generally given the Secretary's published interpretations at least "careful consideration and in proper circumstances . . . considerable weight." [10]

9. Hollman v. Pratt & Whitney Aircraft, 435 F.2d 983 at 988 (5th Cir. 1970) ; Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 170–171, 84 S.Ct. 595, 597, 11 L.Ed.2d 590 (1964) ; Fishgold v. Sullivan Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

10. Wirtz v. Keystone Readers Service, Inc., 418 F.2d 249 at 257 (5th Cir. 1969). See, also, Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) ; and Helton v. Mercury Freight Lines, Inc., 444 F.2d 365 at 368, footnote 4 (5th Cir. 1971), i. e., ". . . the Handbook has . . . . a measure of weight."

Chapter XV of the "Veterans' Reemployment Rights Handbook" includes the following pertinent comments at page 91:

> . . . there are numerous . . . benefits which form a part of the veteran's *total* employment status or "position" and thus come within the purview of the reemployment statute at and after the time he applies for reinstatement. Among these other features of the employment may be such benefits as holiday pay, sick pay, insurance of various types, bonuses, profit sharing plans, *pension or retirement plans*, and severance pay. The reemployment statute does not *independently* create such benefits for the veteran, but where they have been established by contract, policy, or practice, the statute does affect the manner in which the established rules are applied to him. (Emphasis added.)
>
> \* \* \* \* \* \*
>
> With respect to benefits maturing and enjoyable only during the period of his military absence, the veteran is to be treated like an employee who has been on a *nonmilitary furlough or leave of absence.* With respect to benefits maturing or enjoyable after his reinstatement, he is to be treated as if he had remained continuously employed rather than absent in military service.

The "Veterans' Reemployment Rights Handbook" further provides on page 97:

> As far as reemployed veterans are concerned, some common threads do run through all retirement problems. Continuity of service with the employer or in the industry is the essence,

though perhaps not the entirety, of what a retirement plan is designed to reward, and the reinstated veteran's military service time must of course be counted toward his continuous service with his employer. *In nearly all cases, the retirement annuity or pension is a right or benefit maturing after reinstatement, and as such, is subject to the requirement that the veteran be treated not as if he had been on leave of absence but as if he had remained continuously employed rather than absent for military service,* except where it is shown that credits under the pension plan are, in fact, precise additional pay for units of work done. (Emphasis added.)

■ This court is of the considered opinion that, as has previously been pointed out, there is no evidence in this case to show that the pension plan is based upon any "unit of work" requirement. Hence this court is led to the inescapable conclusion that Sections 459(b) and (c) mandate that the defendant, Alabama Power Company, recompute the plaintiff's accredited service by including the time the plaintiff spent in the service of his country.

## THE "OTHER BENEFIT" [11] PROVISION OF THE MILITARY SELECTIVE SERVICE ACT

■■ The defendant, Alabama Power, asks this court to classify the retirement pension benefits under its plan as "other benefits" and therefore to rule that the case is governed by defendant's established rule and practice relating to employees on furlough or leave of absence. This practice has been to treat those employees in military service as if

---

11. 50 U.S.C.App. § 459(c) provides in pertinent parts as follows:

> *Any person who is restored to a position* in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, *shall be entitled to participate in insurance or other benefits* offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration. (Emphasis added.)

on furlough or leave of absence and therefore to exclude military time in computing "accredited service." However, this path was barricaded by the Supreme Court in *Accardi, supra,* wherein the court stated:

Without attempting in this case to determine the exact scope of this provision of § 8(c) it is enough to say that we consider that it was intended to add certain protections to the veteran not to take away those which are granted him by § 8(b)(B) and the other clauses of § 8(c). 383 U.S. at 232, 86 S.Ct. at 773.

Under this reasoning, the "other benefits" clause must be viewed as a separate addition to the seniority provisions of the act, and it cannot be used as a basis for defining and limiting the perquisites of seniority. While the problem of construction is difficult, it seems most likely that the expression "insurance or other benefits" was meant to cover a fairly narrow group of economic advantages whose common quality was that they were miscellaneous fringe benefits not usually regarded as part of "pay," "status," or "seniority." The "other benefits" clause was added to the act for the express purpose of entitling employees to receive while in the service such benefits as their employers accorded employees on leave or furlough. *Accardi, supra,* 383 U.S. at 231, 86 S.Ct. 768.

### THE "GRATUITY" ARGUMENT

█ The defendant has argued that no law requires it to provide a pension plan for its employees and that the providing of same is a mere gratuity on its part and not an enforceable contract, essentially since the plan, as one of its provisions, specifically states as follows:

IX. LIMITATION OF RIGHTS OF THE EMPLOYEE

This Plan shall not be deemed to constitute a contract between the Company and any employee or to be a consideration for, or a condition of, the employment of any employee.

It is sufficient answer to this contention to say that it has been a part of the collective bargaining agreement which covered this plaintiff since 1961, regardless of this internal disclaimer. This contention was set at rest in Ball v. Victor Adding Machine Company, 236 F.2d 170 at 173, 174 (5th Cir. 1956), by cogent reasoning as follows:

And the idea that a Pension Trust expressly approved, as was this one, by the Internal Revenue Service as a plan qualified under Section 165, 1939 Code, 26 U.S.C.A. § 165; 1954 Code, § 401, 26 U.S.C.A. §§ 401, 402, is a mere gratuity or charitable enterprise beyond even the barest scrutiny by its sole beneficiaries (the employees) is completely out of keeping with the philosophy and purpose of such plans as the means of paying *additional* compensation to the covered employees in a way to afford substantial and immediate tax advantages to the Employer and substantial tax and monetary benefits to the employees. See, Law of Federal Income Taxation, Mertens, 1942, Vol. 4, § 25.69, page 440, §§ 25.70 to 25.76, incl., and full historical background, 1954 Pocket Supplement, §§ 25.70 to 25.75. A pension trust is no will of the wisp for " * * * within the meaning of section 165(a) [it] is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement * * *." Federal Tax Regulations, § 39.165–1(a)(2). And see, §§ 39.165–1(a)(3), 39.165–4(e). So much so is it for the employees that the statute, Sec. 165(a), requires that the Pension Trust be "for the exclusive benefit of [the] employees" with distribution of corpus and income of such trust limited to "such employees or their beneficiaries" with an absolute prohibition against use or diversion of any such funds to "purposes other than for the exclusive benefit of [the] employees or their benefi-

ciaries". It must be nondiscriminatory as to employees, Regulations, §§ 39.165–1(a), 39.165–4, and forbid diversions, § 39.165–2; and the Employer's contributions are in no sense a gift for they are deductible, " * * * only to the extent that they are ordinary and necessary expenses * * * in carrying on [the] trade or business and are compensation for personal services actually rendered * * *" and together with all other compensation paid to the employee constitutes "a reasonable allowance for compensation for the services actually rendered * * *", Regulations, § 39.23(p)–1–(b), see, e. g., Farnsworth & Co. v. Commissioner, 5 Cir., 203 F.2d 490. "It surely cannot be seriously disputed but that such [a pension agreement] on the part of the company forms a part of the consideration for work performed * * *. In this view, the pension thus promised would appear to be as much a part of his 'wages' as the money paid him at the time of the rendition of his services." Inland Steel Co. v. N.L.R.B., 7 Cir., 170 F.2d 247, 253, 12 A.L.R.2d 240, certiorari denied 336 U.S. 960, 69 S. Ct. 887, 93 L.Ed. 1112.

There can therefore be no question that the claim here is contractual in nature and that the pension plan was part of a binding contract. Hence, this court concludes there is no merit in the defendant's assertion that its pension plan is a mere gratuity and not a perquisite of seniority.

## THE CONSTITUTIONAL ARGUMENT

This court is not persuaded by the argument of defendant that its constitutional rights would be impaired if it were ordered to increase the pension benefits to be paid to this plaintiff. The Supreme Court of the United States has construed the statute here in question too many times, without declaring it unconstitutional, for this court to be persuaded by such an argument. Fishgold v. Sullivan Drydock & Repair Corp. et al., 328 U.S. 275, 66 S.Ct. 1105, 90 L. Ed. 1230 (1946); Tilton et al. v. Missouri Pacific Railroad Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); Accardi et al. v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed. 2d 717 (1966); Eagar et al. v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967).

Furthermore, the statute in essence prescribes conditions of employment which an employer must accept if he retains the returned veteran more than one year after he has returned from military service, since § 459(c)(1) does not require the employer to retain the veteran in his employ for more than one year. Obviously, if the employer does retain the veteran beyond that one year, he retains that veteran with the mandate of the statute included as an implied provision in such contract of employment as exists between the veteran and his employer. Defendant's retention of plaintiff for more than the one year mandated by the statute waived any impairment of defendant's constitutional rights.

## STATUTES OF LIMITATIONS AND THE DOCTRINE OF LACHES

The defendant maintains that the plaintiff is barred from relief because of the Alabama statutes of limitations or because of the equitable doctrine of laches. The dates involved in this suit are not in dispute; it is established that the plaintiff commenced his employment on August 16, 1937, temporarily left the defendant's employment on March 18, 1943, and honorably served his country until October 1, 1945. On October 8, 1945, the plaintiff was reinstated with defendant and continued that employment until he retired on June 1, 1971. The plaintiff's status under the defendant's pension program was reviewed with the plaintiff by the defendant on September 11, 1967, at which time the plaintiff was advised by the defendant that defendant's pension plan did not afford accredited service for the time the plaintiff was in the military service. The plaintiff contacted the appropriate

officer of the United States Department of Labor on July 6, 1971, to assist him in pursuing this claim and to request that suit be brought by the U. S. Attorney. Suit was filed by the U. S. Attorney on behalf of the plaintiff on December 20, 1972.

■ There is no federal statute of limitations applicable to actions brought under 50 U.S.C.A. App. § 459. Thus this court must rely upon the statutes of limitations found in Alabama law.[12] To determine which Alabama statute of limitations is applicable to a Section 459 right, this court must first determine under federal law the nature of the right and then decide which statute of limitation Alabama would have enforced if the action seeking similar relief had been brought in the state court.[13] Deciding which statutory period is appropriate is a two-step process. First, with reference to federal law, this court must determine the "essential nature" of the claim. Then this court must refer to the Alabama courts' interpretation of its statute of limitation to ascertain which period would be applicable to a claim similar to the one before this court. Bell v. Aerodex, Inc., 473 F. 2d 869 at 871 (5th Cir. 1973).

The defendant places principal reliance on two recent Fifth Circuit opinions, Bell v. Aerodex, Inc., *supra*, and Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5th Cir. 1972), where the Fifth Circuit, in passing on *claims for back wages only* under the 1967 act, held that such claims were actions at law and that the court was bound to apply the applicable statutes of limitations of Florida and Alabama. But the defendant's reliance on *Blair* and *Bell* is misplaced. In both of these cases, the Fifth Circuit was careful to note that the claims in question, being only for back wages, should be denominated as "wage cases" and suggested a different result might follow if the wage claims were coupled with claims for the restoration of a veteran's rights.

■ This court, after a careful review of the pleadings in this case, is of the considered opinion that this is not a suit by the plaintiff for back wages. Rather, the plaintiff primarily seeks an injunctive order, in the nature of the equitable remedy of specific performance, requiring the defendant to include his military service time in computing his monthly or yearly pension or retirement benefits—back installments *and future installments*. It is true that ultimately the plaintiff will receive an increased amount of money—a precise amount of $17.11 per month at present, and perhaps a different amount if the plan is later changed. However, this court takes judicial notice that all perquisites of seniority will result in some payment of money, i.e., a higher place on the seniority list generally results in a veteran receiving higher wages, longer vacations, etc. As has been previously pointed out, seniority is not an abstract right or position. Rather, seniority is a measurement by which other rights are determined; advancement, promotion, higher pay, vacations and vacation pay, layoffs, supplemental employment benefits, severance pay, and in the present case, retirement and pension benefits. All of these seniority benefits result in the veteran receiving more money than if his military service time were not included in the computation of any of these benefits. Hence, this court concludes that because this is not a strictly "back wage case" suit, the one-year Ala-

12. O'Sullivan v. Felix, 233 U.S. 318, 322, 34 S.Ct. 596, 598, 58 L.Ed. 980 (1914); Balkam v. Woodstock Iron Co., 154 U.S. 177, 187–188, 14 S.Ct. 1010, 1014, 38 L.Ed. 953 (1894); Moviecolor, Ltd. v. Eastman Kodak Co., 2 Cir. 1961, 288 F.2d 80, 90 A. L.R.2d 252, cert. den. 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 at 818 (5th Cir. 1972).

13. Sewell v. Grand Lodge of International Association of Machinists and Aerospace Workers, 5 Cir. 1971, 445 F.2d 545, 549, cert. den. 404 U.S. 1024, 92 S.Ct. 674, 30 L. Ed.2d 674 (1972); Beard v. Stephens, 5 Cir., 1967, 372 F.2d 685, 688.

bama statute of limitations is not applicable to this action.[14]

The collective bargaining agreement covering the plaintiff at the time of his retirement did include the pension plan as a matter of contract and hence the pension plan was part of his contract of employment. Moreover, the plaintiff in this case has expressly brought a "suit for the restoration of veteran's rights," which this court deems to be an equitable action to restore this veteran plaintiff to the status and seniority he would have obtained had he not responded to the call of his country. Hence, because this case is not a "back wage case" but rather is in the nature of a "suit for the restoration of veteran's rights," this court is of the considered opinion that if any statute of limitations is applicable, it would appear to be the six-year statute of limitations which applies to claims arising out of contracts.[15]

The defendant, Alabama Power, contended in its brief that if the six-year statute of limitations is applied by this court, the plaintiff must still be denied relief for his failure to commence any action within six years from the time he could have successfully maintained a suit based upon that cause of action. Alabama Power asserts that the plaintiff's cause of action arose upon his return to work for Alabama Power on October 8, 1945. This court is of the opinion that this contention by the defendant contains no merit.

 In the case of a pension plan, the beneficiary generally has no right of action until his rights have vested by the confluence of the stipulated time with the continued adherence to

the conditions of the plan. A failure to assert it before it becomes vested does not start the statute running. Barninger v. National Maritime Union, 372 F. Supp. 908 at 913 (S.D.N.Y.1974). Moreover, the defendant's pension plan, in Section IX, entitled "Limitation of Rights of the Employee," contains the following sentence:

> Inclusion under the Plan will not give any employee any right or claim to a Retirement Income except upon reaching Normal Retirement Date or Early Retirement Date and no employee or Provisional Payee shall be entitled to any right or claim to a Retirement Income except to the extent such right is specifically fixed under the terms of the Plan and there are funds available therefor in the hands of the Trustee.

The court is of the opinion that no claim for relief arose before the plaintiff's retirement date. It is possible that an anticipatory breach occurred in 1967 when the defendant informed the plaintiff that he would not get credit in seniority computation under the pension plan for the time spent in military service. However, the law is settled that the plaintiff has the election to bring his claim for anticipatory breach at the time it occurs or he may elect to wait until time for performance.[16] Plaintiff did not elect to declare an anticipatory breach in 1967; therefore, the statute of limitations did not begin to run prior to his retirement in 1971.

 If the court is in error in holding that the six-year statute applies, nevertheless the one-year statute would be only a partial bar. Basic hornbook

---

14. Code of Alabama, tit. 7, § 26. Limitation of one year.
 The following must be commenced within one year:
 * * * * *
 Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated.

15. Code of Alabama, tit. 7, § 21. Limitation of six years.

The following must be commenced within six years:
 * * * * *
 Actions founded on promises in writing not under seal.
 * * * * *
 Actions upon any simple contract or specialty, not herein specifically enumerated.

16. Saliba v. Brackin, 260 Ala. 103, 69 So.2d 267 (1954).

law establishes that where a debt or obligation is payable in installments, the statute of limitations begins to run as to each installment from the time it falls due. Maynor v. Dillin, 241 Ala. 362, 2 So.2d 440 (1941); Hodgson v. Behrens Drug Co., 475 F.2d 1041 at 1050 (5th Cir. 1973); Tye v. Hertz Drivurself Stations, 80 F.Supp. 536 (E.D.Pa.1948), appeal dismissed.

■ Finally, Alabama Power asserts that if this court determines that the plaintiff's claim for relief constitutes an equitable cause of action, then the claim of plaintiff should be denied because of the plaintiff's inexcusable delay of 35 years in prosecuting his claim to the detriment of Alabama Power. However, this court cannot agree that the doctrine of laches forecloses relief for this retired veteran. The doctrine of laches is an equitable doctrine based on public policy which requires the discouragement of stale demands. Laches is not based upon a mere lapse of time, but is principally a question of the inequity of permitting a claim to be enforced where some change in condition has taken place which would make enforcement of the claim unjust. Muscianese v. United States Steel Corporation, 354 F.Supp. 1394 at 1398 (E.D.Pa.1973).

■ Laches consists of two basic elements, inexcusable delay in instituting suit and prejudice resulting to the respondent from such delay. Sobosle v. United States Steel Corporation, 359 F. 2d 7 at 12 (3rd Cir. 1966). The question of delay, as well as the issue of laches itself, is addressed to the sound discretion of the trial court. Burnett v. New York Central Railroad Company, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). On July 6, 1971, the plaintiff contacted an appropriate officer of the United States Department of Labor to assist him in pursuing his claim. This court finds that the plaintiff was very diligent in pursuing his rights under the defendant's pension program, as the plaintiff contacted the Department of Labor five days after his retirement.

Suit was then filed by the U. S. Attorney on behalf of the plaintiff on December 20, 1972. Plaintiff had no obligation to act more quickly. The pension plan itself stated he had no rights thereunder until reaching retirement age. He had the right to rely upon this language. Any delay on his part was clearly excusable.

This court finds no merit in the contention of Alabama Power that it suffered substantial prejudice because the plaintiff delayed his assertion of his rights under the pension program. Furthermore, the court is especially unpersuaded by the argument that defendant will have been prejudiced if the court rules in plaintiff's favor, because defendant will have, by its failure to correctly compute the seniority of its retiring employees, insufficiently funded its pension plan. This court is of the considered opinion that this defendant has had the interest-free use of a certain sum of money, the amount of which is not ascertainable by the evidence, for a number of years, which it otherwise would not have had the use of because it would have been paid into the trust fund. The defendant cannot be heard to complain of the free use, without interest, of this sum of money, whether it be large or small. Hence this court cannot agree with the defendant that the doctrine of laches bars this retired World War II veteran from the seniority rights and benefits which would have automatically accrued to him had he remained in private employment rather than responding to the call of his country.

Accordingly, this court finds that the plaintiff is entitled to have the two-year, six-month and 20-day period he spent in the service of his country computed as "accredited service" under the defendant's retirement pension plan. The plaintiff is thereby entitled to an increase in his retirement pension benefits of $17.11 per month. Additionally, the plaintiff is entitled to an appropriate award to compensate him for loss of this amount in past pension payments, and to a mandatory injunction requiring the

defendant to increase the plaintiff's present pension payments from $198.95 per month to $216.06 per month, as to all future installments of his pension. Plaintiff will submit an appropriate order to the court for signature within 30 days.