**Austin K. LETSON, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. C79–113A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 6, 1981.

William Berger, Labor Dept., Atlanta, Ga., for plaintiff.

Paul Talmadge, Atlanta, Ga., Kalvin M. Grove, William G. Schur, Chicago, Ill., Robert A. Penney, Boston, Mass., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This action was brought by plaintiff pursuant to the Veterans' Reemployment Rights Act, 38 U.S.C. §§ 2021–2026, in order to have his period of military service included in his credited service for pension benefits which began upon retirement on February 1, 1979. The case is presently before the court on defendant's cross-motion for summary judgment, defendant's motion to strike the affidavit of Austin K. Letson, and plaintiff's superseding motion for summary judgment.

The plaintiff was employed by defendant from February 18, 1942 until shortly before April 2, 1943, on which date he entered

active duty with the U.S. Army. Plaintiff was placed on terminal leave on April 20, 1946, and was honorably discharged effective May 7, 1946. Plaintiff returned to defendant's employ on May 1, 1946, and remained until November 7, 1978. His retirement was officially effective on February 1, 1979.

Between August 1, 1934 and May 31, 1973, defendant's pension plan required eligible employees to authorize deductions from salary checks. On February 18, 1943, prior to his leaving to enter military service, plaintiff became eligible to join the plan. He had completed one year of employment, he was making over $1,400.00 per year. Formal join-up dates were February 1 or August 1 *after* reaching eligibility. Plaintiff entered the service shortly before April 2, 1943, and as of that date he had not elected to become a member of the plan. Plaintiff elected to join the plan on August 1, 1946, the first available date upon his return from service. Plaintiff's accredited time for pension benefit purposes now dates from August 1, 1946, and he seeks to have his credited service date from his first available sign-up date on August 1, 1943.

I. *Defendant's Motion for Summary Judgment on the Issue of Statute of Limitations*

■ Defendant's motion first relies upon the application of the Georgia statute of limitations to bar plaintiff's claim. At the time that plaintiff was reemployed on May 1, 1946, the VRRA contained no federal statute of limitations and some courts applied the most analogous limitation period prescribed by the state where the controversy originated. *See generally* cases cited

note 3 *infra.* At the time that plaintiff retired on February 1, 1979, Section 2022 of the VRRA had been amended to provide that "[n]o state statute of limitations shall apply to any proceedings under this chapter." If this 1974 amendment applies retroactively, then the defense of the statute of limitations would be abolished regardless of whether it had already run. Since the court finds that the amendment does apply retroactively, it is not at this point necessary to discuss when the cause of action arose.[1]

Thirteen courts have been faced with the issue, and nine courts have entered written decisions ruling that the 1974 amendment applies retroactively to a cause of action which arose prior to December 3, 1974.[2] *Banks v. U.S. Steel Corp.*, 89 CCH Labor Cases ¶ 12,268 (N.D.Ind.1980); *Congrove v. St. Louis-San Francisco Ry. Co.*, 87 CCH Labor Cases ¶ 11,815 (W.D.Mo.1979); *Scott v. Atchison, Topeka & Santa Fe Ry.*, 78 CCH Labor Cases ¶ 11,291 (C.D.Calif.1976); *Watkins v. Consumers Power Co.*, 78 CCH Labor Cases ¶ 11,449 (E.D.Mich.1976); *Coles v. Sunshine Biscuits, Inc.*, 80 CCH Labor Cases ¶ 11,860 (E.D.N.Y.1976); *Bunner v. Eaton Corp.*, 81 CCH Labor Cases ¶ 13,050 (N.D.Ohio 1976); *Hirschberg v. Braniff Airways, Inc.*, 404 F.Supp. 869 (E.D.N.Y.1975); *Farrell v. Chesapeake & Ohio Ry. Co.*, 77 CCH Labor Cases ¶ 11,157 (W.D.Pa.1975); *Armstrong v. Baker*, 394 F.Supp. 1380, 1385 (N.D.W.Va.1975). The case of *Hirschberg v. Braniff Airways, supra*, represents this line of authority. The court concluded from the legislative history of the amendments to the Act that they constituted a clarification of the law rather than a change.[3] The Report of the Senate Com-

**1.** As an alternate holding, the court finds that the cause of action arose at the time of retirement, an issue to be discussed with regard to the defense of laches, *infra.*

**2.** No opinions were entered in *Wilkes v. Hughes Tool Co.*, (S.D.Tex., Civil Action No. 74–H–750), and *Yarborough v. Texas and Oklahoma Express, Inc.* (N.D.Tex., Civil Action No. 3–77–6109(g)). These courts simply denied defendant's motion to dismiss based on the Texas two-year statute of limitations. The actions

accrued before 1974 but were filed more than two years later.

**3.** Two Fifth Circuit cases had applied state statute of limitations to actions under the Act. *Bell v. Aerodex, Inc.*, 473 F.2d 869 (5th Cir. 1973); *Blair v. Page Aircraft Maintenance, Inc.*, 467 F.2d 815 (5th Cir. 1972). However, case law nationwide was in an uncertain state. *See Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Leonick v. Jones and Laughlin Steel Corp.*, 258

mittee on Veterans' Affairs notes that a purpose of the amendment was to have a policy of uniform availability of enforcement rights for returned veterans throughout the country. S.Rep.No. 93–907, 93rd Cong., 2d Sess., at 111. The statute applies by its terms to "any proceedings" under the Act, and thus there is no language to impede retroactive application. Such an application clearly advances Congress' expressed purpose. Accordingly, defendant's motion for summary judgment on the issue of Statute of Limitations is denied.

## II. Defendant's Motion for Summary Judgment on the Issue of Laches

▮▮▮ Defendant's motion also relies upon laches as an affirmative defense to bar plaintiff's claim. Two criteria must be satisfied before the defense will be upheld: a showing of inexcusable delay in asserting a claim, and a showing that such delay caused undue prejudice to the party against whom the claim is asserted. *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 101 (5th Cir. 1978). Defendant supports the argument that there was an inexcusable delay by maintaining that Mr. Letson's cause of action arose at the date of Liberty's decision in 1946 not to credit the pension calculation with years of military service, or, at the latest, in 1947 when Mr. Letson became aware of that decision. However, this court concludes that the case of *Davis v. Alabama Power Co.*, 383 F.Supp. 880, 893 (N.D.Ala.1974), *aff'd.*, 542 F.2d 650 (5th Cir. 1976), *cert. den.* on particular point, 429 U.S. 1037, 97 S.Ct. 731, 50

L.Ed.2d 748 (1977), decides this issue. *Davis* holds that the claim for pension benefits accrues upon "the [veteran's] retirement date" when he seeks to require that time spent in the military be credited by an employer to compute those pension benefits.[4] Since Mr. Letson's retirement was effective on February 1, 1977, and he filed suit on January 19, 1979, there has been no inexcusable delay.[5]

The defendant argued that *Davis* was wrongly decided in light of the subsequent opinions of *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). These employment discrimination cases held that a "continuing violation," for purposes of determining the accrual date for applying a limitations period, cannot be established by merely showing that there are present effects of past illegal discriminatory acts. However, *Evans* does recognize that even when there are present *effects* of a past illegal action, a present *violation* can exist. In *Evans*, a onetime illegal action had continuing effects only because of the workings of a neutral seniority system. The action in the instant case, if found to be illegal, does represent a present violation because it is an ongoing practice that denies pension benefit credit to some employees for time spent in the military. Thus, the holdings in *Evans* and *Ricks* do not change the *Davis* decision or this court's conclusion on the accrual of the cause of action. Accordingly,

---

F.2d 48 (2d Cir. 1958); *Delman v. Federal Products Corp.*, 251 F.2d 123 (1st Cir. 1958); *Donner v. Levine*, 232 F.2d 185 (2d Cir. 1956); *Ufland v. Buffalo Courier Express*, 394 F.Supp. 199 (W.D.N.Y.1974).

4. The *Davis* court rejected the defendant's claim that the cause of action arose upon return to work, stating that:

It is possible that an anticipatory breach occurred in 1967 when the defendant informed the plaintiff that he would not get credit in seniority computation under the pension plan for the time spent in military service. However, the law is settled that the plaintiff has the election to bring his claim for anticipatory breach at the time it occurs or he may

elect to wait until time for performance. Plaintiff did not elect to declare an anticipatory breach in 1967; therefore, the statute of limitations did not begin to run prior to his retirement in 1971.

*Davis, supra* at 893.

5. A finding of inexcusable delay is necessary to uphold the defense of laches. Since there was no delay, the issue of prejudice to the defendant is moot. In any case, it appears that the loss of the most reliable evidence on affirmative employee waivers resulted from a corporate decision to destroy waiver cards and resolicit in 1946, rather than from the passage of time. (Milam Second Deposition, 56–57.)

defendant's motion for summary judgment on the issue of laches is denied.

### III. Defendant's Motion to Strike the Affidavit of Plaintiff

■ The defendant has moved to strike paragraph 3 of the affidavit of Austin K. Letson on the grounds that it does not comply with Fed.R.Civ.P. 56(e), which requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[6] Defendant characterizes the statement as hypothetical, speculative, and conclusory. However, a statement by a person about his state of mind or intent is admissible as evidence of such intent. *See Weinstein's Evidence*, ¶ 803(3)[02], pp. 803–94. This is true even where a statement is deemed to be an opinion on an ultimate issue in the case. *See* Fed.R.Evid. 704. Therefore, defendant's motion to strike is denied.

### IV. Plaintiff's Motion for Summary Judgment and the Situations Covered by the Act

■ In order to rule on plaintiff's motion for summary judgment, the court must make several determinations on the applicable legal standards and the relevancy of proffered evidence. The rule of law governing this action is set forth by the Supreme Court in *Alabama Power Co. v. Davis*, 431 U.S. 581, 589, 97 S.Ct. 2002, 2007, 52 L.Ed.2d 595 (1977):

> If the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a "perquisite of seniority." If, on the other hand, the veteran's right to the benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority within the coverage of Section 9 [of the Military Selective Service Act of 1967, now codified as 38 U.S.C. § 2021(b)(2), part of the Veterans' Reemployment Rights Act.[7]

The defendant has conceded that the pension benefit is a reward for length of service. *See* Defendant's Memorandum in Opposition, p. 6, n.18. Accordingly, there is no claim that the pension benefit is in the nature of short-term compensation. The court rules that the pension plan membership was not subject to a "significant contingency," and the plan is thus an aspect of seniority within coverage of the Act. The defendant argues that the fact that employ-

---

6. The third paragraph of Mr. Letson's affidavit states:

 If I had been asked the question my answer would have been unequivocal yes. I was in a financial position to have the employee share deducted from my paycheck and I had every intention of maintaining a longterm employment relationship with Liberty, as is evidenced by my 37 years with them (including military service) and was looking for financial security with Liberty. It was only because of the interruption of my employment caused by military service which resulted in my not joining the pension plan effective August 1, 1943.

7. Very late during the pendency of the motion, defendant raised the argument that the *Alabama Power* decision should not govern this case because "retroactive application" would be inequitable. However, *Alabama Power* did not change the law or overrule precedent, notwithstanding the fact that there had been a split in the circuits. Rather, formerly developed principles were applied in a manner different from that of the circuits. *See Lill v. Beech Aircraft Corp.*, 88 CCH Labor Cases ¶ 11,848 (D.Kans.1980). After reviewing eight prior decisions, the Supreme Court stated that two axes of analysis were identifiable for determining whether a benefit is a right of seniority under the Act. *Alabama Power, supra* at 589, 97 S.Ct. at 2007. In any case, where a decision construes a statute of Congress, the existence of deviant rulings by circuit courts could not alone lead to a rule of non-retroactive application. *See United States v. Estate of Donnelly*, 397 U.S. 286, 294–95, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312 (1970). Plaintiff does count the military time of those who joined the pension plan prior to leaving, and a person in the position of a returning veteran is not so different by virtue of his non-election before duty as to render retroactive application inequitable in light of the history and intent of the Act.

ees were required to sign up for the plan, and that some did not, constitutes the significant contingency that takes the benefit out of the Act. However, the term has not been used by the Supreme Court to refer to employee choice, but rather to refer to the potential exercise of management discretion. The contingency concept originated in *McKinney v. Missouri-K. T. R. Co.*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), a case in which a veteran's claim was rejected because of the contingent nature of his expectation of promotion; a promotion depended on the exercise of discretion on the part of the employer. *Alabama Power* adopted this phrase as one applying to a situation where the choice is that of the employer. *See Alabama Power, supra* at 585, 97 S.Ct. at 2005. The court in *Tilton v. Missouri Pacific R. Co.*, 376 U.S. 169, 180–81, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964), indicated that the phrase refers only to employer discretion by stating that a benefit subject to employee choice was protected under the Act.[8] Thus, defendant's argument that the Supreme Court has not decided whether "significant contingency" refers exclusively to management discretion is to no avail.[9]

## V. The Determination of "Reasonable Certainty"

■ The most difficult issue in this case is whether the benefit of membership in the pension plan would have accrued with reasonable certainty had Mr. Letson been continuously employed by defendant rather than entering the service, so that such membership is a perquisite of seniority. The evaluation of the reasonable certainty of benefit accrual turns on the intent of each employee as of the time he enters military service. *See* Order of court, June 30, 1981 (granting defendant's motion to decertify the class). Defendant's theory is that plan participation is not "reasonably certain" absent proof of actual election, or, at least, pre-military effort to join.[10] Plaintiff's theory is that "reasonable certainty" is to be determined by the actual employment history of the veteran before and after military service. Plaintiff further contends that Mr. Letson is entitled to a rebuttable legal presumption for his claim that but for his absence in military service he would have elected to join the plan at an earlier date. Moreover, plaintiff argues that the fact that Mr. Letson elected to join the plan at the first available time after military service is sufficient evidence to entitle him to the presumption. The defendant takes several positions in the event that its asserted theory is not accepted by the court.[11] First of all, the defendant argues that the plaintiff is not entitled to legal presumptions. In the second place, defendant argues that statistical evidence that large numbers of employees in the same situation as the plaintiff failed or refused to join is relevant for purposes of defeating

8. The Supreme Court found that there was a possibility in every veteran's seniority case "that work of the particular type might not have been available; that the veteran would not have worked satisfactorily during the period of his absence; that he might not have elected to accept the higher position; or that sickness might have prevented him from continuing his employment." In light of the purpose and history of this statute, the Court stated that "we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights." 376 U.S. at 180–181, 84 S.Ct. at 602.

9. Several courts have indicated that it is proper to award a benefit to a veteran where the claim was subject to a form of affirmative employee selection. *See, e. g., Alber v. Norfolk and Western Ry. Co.*, 654 F.2d 1271 (8th Cir. 1981); *Pomrening v. United Air Lines, Inc.*, 448 F.2d 609, 616 (7th Cir. 1971); *Almond v. U.S. Steel Corp.*, 499 F.Supp. 786, 790 (E.D.Pa.1980); *Moore v. State of Kansas*, 86 CCH Labor Cases ¶ 11,390 (D.Kan.1979); *Manzo v. Pacific Telephone & Telegraph Co.*, 76 CCH Labor Cases ¶ 10,768 (C.D.Calif.1975).

10. Defendant's position is based on the argument that there existed opportunities for plaintiff to evince interest or desire to join the plan prior to entering the military.

11. The defendant's positions seem to be generally based on an argument that an optional election by an employee to join a contributory pension plan is different enough from the situation in the cases relied on by plaintiff to warrant different rules or rules that were not necessary to decide those cases.

any applicable presumptions, and such evidence has not been ruled out by the Supreme Court. Finally, the defendant seems to argue that evidence on Mr. Letson's failure to take an opportunity to elect to join the plan before military service began is relevant for purposes of defeating any applicable presumption.

The test of "reasonable certainty" as applied to the instant case is designed to determine whether Mr. Letson would have elected to join the pension plan at an earlier date but for absence due to military service. However, the court agrees with the plaintiff insofar as he contends that evidence of pre-service effort to join is not required to sustain a veteran's claim that he would have taken certain action earlier. The employer cannot defeat a veteran's claim solely by relying on the inference that plaintiff intended not to join the plan because he evinced no pre-service interest. A requirement of proof of pre-service interest would prevent plaintiff from having a determination made on his claim that but for military service, he would have joined the plan. Such a result would be inconsistent with the principle that an employer cannot defeat a veteran's claim by relying on a mere possibility that a veteran would not have taken action to attain a benefit.[12] In *Tilton*, the returning veteran completed the probationary period necessary to obtain seniority in a higher job level to which he had been promoted before departure. Similarly, in the case at bar, plaintiff upon return elected to join the plan for which he had become eligible before departure. Plaintiff in *Tilton* was not required to make a showing on pre-service intentions.

The court does not agree with plaintiff insofar as he contends that *Tilton* or *Alabama Power* should be read to create a *presumption* that plaintiff intended to take action earlier to attain the benefit sought in the case at bar.[13] The plaintiff's election to join the plan at the first opportunity after return is sufficient to *state a claim* that but for the military service he would have joined at the earlier date. As discussed above, proof of pre-service effort is not required. Defendant is, of course, entitled to introduce evidence relevant to the intention of plaintiff before and after military service.[14]

The defendant's statistical data showing that a significant number of employees did not join the plan when first eligible is not relevant to the issue of plaintiff's intent. Fed.R.Evid. 401 states that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The rule is silent as to what factors determine relevance; relevance thus depends on an evaluation of probability in the individual case. Weinstein's Evidence ¶ 401[08]. Statistics on group behavior is the proffered evidence. Namely, the de-

---

12. In light of the statute's history and purpose, the *Tilton* court stated that the possibility that a veteran would not have elected to accept a higher position cannot defeat seniority rights. *Tilton, supra* at 180–81, 84 S.Ct. at 602. In *Tilton*, the employer's policy was that seniority did not begin to run until and unless the employee made an election; the Supreme Court found that this contingency did not defeat the veteran's seniority rights upon reemployment. In *Alabama Power, supra* at 591–92, 97 S.Ct. at 2008, the Court cited *Tilton* for the principle that Congress did not intend to allow unpredictable intervening occurrences to defeat the veteran's seniority rights. *See also Pomrening v. United Air Lines, Inc.*, 448 F.2d 609, 616 (7th Cir. 1971) (granting retroactive seniority rights and drawing an analogy to *Tilton*).

13. The Court in *Alabama Power* stated that the veteran's completion of a probationary period in *Tilton*, the case that originated the reasonable certainty test, was a sufficient indication that but for his military absence he would have completed his probationary period earlier. *Alabama Power, supra* at 586, 97 S.Ct. at 2005.

14. The reasonable certainty requirement is discussed in *Alabama Power, supra* at 591, 97 S.Ct. at 2008, in terms of work history before and after military service. *See Alber v. Norfolk and Western Ry. Co.*, 654 F.2d 1271 (8th Cir. 1981) (directing district court to consider the company's claim that the veteran did not bid on higher pay jobs before entering service and did transfer voluntarily to a lower pay job upon return).

fendant shows that a significant number of eligible employees did not elect to join the plan at the first applicable date. The consequential fact to which the statistics are directed is the intent of the plaintiff. Namely, the defendant contends that plaintiff's intent to decline to join the plan is inferable from the data. Group data cannot be inferentially of use to the jury to make an individual's intent more or less probable. It would require as an initial step in the inference chain the conclusion that the intent of each person making up the group is somehow summarized by the data. This is not the case. Thus, the relationship between the proffered evidence and the consequential fact is not one which allows a determination that the group data may properly alter the probability of the plaintiff's intent. In sum, statistical data is not relevant to resolution of the issue of plaintiff's intent.[15] As stated previously, the defendant is entitled to introduce evidence *relevant* to the plaintiff's intention before and after military service.

## VI. *Plaintiff's Motion for Summary Judgment*

 Defendant's list of material facts in dispute includes the following:

5. Prior to January 1, 1960, an employee who was not being paid by Liberty on either February 1 or August 1, could still elect to participate in Liberty's pension plan.

6. If an otherwise eligible employee signed a sign-up form prior to the February 1 or August 1 sign-up date, the employee could become a participant in Liberty's pension plan on the next succeeding February 1 or August 1 even though the employee on the succeeding February 1 or August 1 was not being paid by Liberty.

The defendant does not indicate how or why this issue is in dispute, nor how it is relevant. Plaintiff, as moving party, has supported the summary judgment motion by submitting the deposition testimony of Mr. Milam of May 15, 1979, at p. 27:

Q. If [an employee] wasn't on the payroll on February the 1st or August the 1st, could he become a member of the [pension] plan?

A. No.

The defendant may be relying on another statement in the affidavit of Mr. Thurman E. Milam to create the alleged issue of fact as to whether an employee could join the plan, depart for service, *and* begin to receive credit while away from work. The affidavit states in pertinent part that the policy of allowing an absent employee to become a participant in the plan was in effect with respect to employees "on an authorized leave of absence with known date of return." Milam Affidavit of November 18, 1980, ¶¶ 7, 8. The defendant has never explicitly applied this characterization to Mr. Letson. In any case, service on active duty would clearly prevent "a known date of return." Moreover, Mr. Letson was not on a "leave of absence" since employment records show that he had been terminated when he entered military service. There must be "significant probative evidence" to support an allegation that there is a genuine issue of fact. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). Mr. Milam's statement on absent employees does not constitute significant probative evidence that the company had a policy that allowed employees to join the plan before service *and* become a participant when absent.

 The defendant also argues that there existed opportunities for the plaintiff to join the plan before departing, and that he knew or should have known about those

---

15. The group data does not allow the plaintiff to show that persons making up the group were not similarly situated to each other or to himself. Therefore, any probative value of the statistics is outweighed by the possibility of the dangers set out in Fed.R.Evid. 403 as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

opportunities. In his first deposition, 25–26; 27, Mr. Milam stated that defendant's policy was to counsel eligible employees and distribute sign-up forms from two to four months before their first available sign-up date. Since Mr. Letson left to join the service four months before his first available sign-up date, he would never have had an opportunity to receive a sign-up form by way of a distribution. However, the defendant relies on the later affidavit of Mr. Milam to create an issue of fact. In the affidavit of November 18, 1980, ¶ 3, Mr. Milam states that sign-up forms were distributed from two to *six* months prior to the employees' first available sign-up date. Plaintiff argues that in considering a motion for summary judgment, the district court should disregard an affidavit that conflicts with an earlier deposition. The Fifth Circuit adheres to a strict standard for refusing to give credence to a discrepant affidavit. In *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980), the Court stated that an affidavit that is inherently inconsistent with prior testimony may be disregarded. However, if the deposition reflects confusion and the affidavit assertion is plausible, then the affidavit should not be rejected. These mitigating factors are not present in the case at bar. In the first deposition on May 15, 1979, p. 27, line 3, Mr. Milam responded to the question of whether there was a distribution policy by stating that there was no such policy, but there was an indication in the records that it was done from two to four months prior to the sign-up date. Thus, defendant's affidavit is inherently inconsistent with a prior deposition, and it cannot be used to create a fact in dispute.

 The plaintiff is correct in contending that the defendant has not shown an opportunity to join the plan through distribution of sign-up forms, and the defendant has not shown a policy to give credit to eligible absent veterans who had not signed up before departure for service.[16] However, it is undisputed that in addition to distribution of sign-up forms, employees could also obtain sign-up forms at any time prior to their first available sign-up date. Thus, some evidence on opportunity exists. When the issue to be decided involves intent, the court is reluctant to grant summary judgment. *Croley v. Matson Navigation Co.*, 434 F.2d 73 (5th Cir. 1970) (observing that courts should be cautious when summary judgment involves state of mind, since much depends on the credibility of the witness whose intent is at issue). It may be possible for defendant to show that otherwise eligible employees were allowed to join the plan pre-departure and pre-signup date, that the plaintiff knew or should have known about such an opportunity, and that plaintiff intended not to join the plan. Accordingly, plaintiff's motion for summary judgment is DENIED.

In sum, the defendant's motion for summary judgment is DENIED, defendant's motion to strike the affidavit is DENIED, and plaintiff's motion for summary judgment is DENIED. The plaintiff's election upon return is sufficient to state his claim that but for service, he would have joined the plan earlier. The defendant is entitled to present relevant evidence and attempt to show that plaintiff did not intend to join the plan at the earlier date.

---

**16.** The briefs have not addressed the question of how defendant's "absent employee" policy is relevant to the intent of the plaintiff to join the plan at the earliest applicable date.