Jack E. LEONARD, Plaintiff–Appellee,

v.

UNITED AIR LINES, INCORPORATED, Defendant–Appellant.

No. 91–1073.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1992.

Decided Aug. 12, 1992.

Wilber H. Boies (argued), Paul L. Langer, David S. Finch, McDermott, Will & Emery, J. Craig Busey, United Air Lines, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Jack Leonard, a pilot for United Air Lines, was recalled to military service in October 1948 to take part in the Berlin Airlift. When he left, he stopped participating in United's pension plan. On his return in January 1953, Leonard asked permission to make up the contributions he missed between 1948 and 1953. United refused then and refuses now. Leonard sued the company under the Veterans' Act,[1] 38 U.S.C. §§ 2021 *et seq.* (1988), to recover the "perquisite of seniority" he lost while on active military service. *Alabama Power Co. v. Davis*, 431 U.S. 581, 589, 97 S.Ct. 2002, 2007, 52 L.Ed.2d 595 (1977). On cross-motions for summary judgment, the magistrate judge found for Leonard and ordered United to allow him to make up his lost contributions. We affirm.

## I.

Leonard started working for United in 1946. At the earliest opportunity, in August 1947, he began to contribute to United's voluntary, contributory pension plan for its pilots (the Retirement Income Plan or Plan). A little over a year later, Leonard was recalled to military service for the Berlin Airlift, and he took military leave from the company. The terms of Leonard's departure are in some dispute. United says that it offered Leonard the opportunity to continue his participation in the Plan. Nonetheless, United also offered Leonard the opportunity to withdraw from the Plan and to take his past, accumulated contributions with him. It is undisputed that this option was not offered to employ-

Fred Foreman, U.S. Atty., Crim. Div., Chicago, Ill., Helene Boetticher, Sharon E. Hanley (argued), Dept. of Labor, Office of the Sol., Washington, D.C., Michele M. Fox, Asst. U.S. Atty., Civ. Div., Appellate Section, Chicago, Ill., for plaintiff-appellee.

1. The present name of the Veterans' Act is the Vietnam Era Veterans' Readjustment Assistance Act of 1974. Despite its name, the Act is essentially a reenactment of legislation that has been in force since 1940. *See* Selective Training and Service Act of 1940, ch. 720, § 8(b), 54 Stat. 885, 890 (1940); and *Hanna v. American Motors Corp.*, 557 F.2d 118, 119 n. 1 (7th Cir.1977) (detailing reenactments and amendments).

ees going on other forms of leave. According to United, after having his options explained to him and after signing a waiver form, Leonard withdrew from the Plan and took his money. Leonard does not dispute that he was offered the option, but he appears to dispute that he withdrew his accumulated contributions, that he was counseled or that he signed any form requesting withdrawal of his contributions.

Leonard was honorably discharged in November 1952. He returned to his position at United in January 1953 and immediately requested that he be allowed to make up the contributions he missed while on military leave. According to Leonard's later presentation to the United Plan Committee, he also offered to make up any contributions he might have withdrawn. Letter of Jack E. Leonard to Plan Committee (May 22, 1981) (R. 53, Tab 5). The company refused, on the ground that Leonard had left the Plan in 1948 by withdrawing his contributions: "Under these circumstances, it would be necessary that you begin anew your participation in the Retirement Income Plan." Memorandum of H.L. Pollard (Jan. 5, 1953) (R. 53, Tab 3).

Leonard did "begin anew his participation" and forgot about the matter until 1981. At that point, United sent him a pre-retirement pension brochure which notified him that he had 421 months of regular service but only 337 months of pension plan participation. Leonard's pursuit of the present action begins here, eleven years ago. First, Leonard renewed his request to make up his old contributions. United's Plan Committee refused, again because Leonard withdrew his contributions when he went on military leave. Leonard appealed to United's Pilot Pension Board but had no more success. By July 1982, these internal administrative proceedings had run their course. Leonard then sought the assistance of the Department of Labor under the Veterans' Act. *See* 38 U.S.C. § 2025. In January 1985 the Department of Labor finally decided to help Leonard and forwarded his case to the Department of Justice for prosecution. The Department of Justice filed suit on May 22, 1987.

The case was tried by consent before a United States Magistrate Judge, with direct appeal to this court. Magistrate Judge Rosemond held that Leonard's cause of action under the Veterans' Act accrued in 1953, when United first refused to allow him to make up his contributions. Order at 9 (Dec. 11, 1980). Further, the judge found that Leonard's delay was inexcusable and that United had been prejudiced because relevant evidence had been lost. *Id.* at 9–10. Nonetheless, the judge decided that the provisions of the Veterans' Act compelled a ruling in favor of Leonard. *Id.* at 10. The reason for this decision is somewhat obscure, but the judge may have meant that Leonard would have won even if United had not lost relevant evidence. In other words, United was not prejudiced by Leonard's delay after all. *Id.* at 13–14. On the merits, the judge concluded that participation in United's Retirement Income Plan was a perquisite of seniority. Whether or not Leonard withdrew from the Plan, the Act required United to allow Leonard to return to the position he would have been in had he not been called to service.

We affirm, but for slightly different reasons.

## II.

### A. *Accrual and Laches*

■ United's strongest argument on appeal is that once the magistrate judge found that the conditions of laches had been met, the case should have been dismissed with prejudice. *Lingenfelter v. Keystone Consol. Inds., Inc.*, 691 F.2d 339, 341 (7th Cir.1982). While we agree in principle, we do not need to reach the issue. Instead, we agree with Leonard's original argument that his cause of action did not accrue until his pension benefits vested on his retirement in August 1981.

■ There is overwhelming authority for the proposition that a Veterans' Act claim for lost pension benefits does not accrue until the benefits vest at retirement. *See Davis v. Alabama Power Co.*, 383 F.Supp. 880, 893 (N.D.Ala.1974), *aff'd per curiam,*

542 F.2d 650 (5th Cir.1976), *cert. denied on this point,* 429 U.S. 1037, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977), *aff'd on other issues,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977); *Tennyson v. Babcock & Wilcox Co.,* 105 LRRM (BNA) 2927, 2930, 1979 WL 2023 (S.D.Ind.1980); *Letson v. Liberty Mutual Ins. Co.,* 523 F.Supp. 1221, 1225 (N.D.Ga.1981); *Troiani v. Bethlehem Steel Corp.,* 570 F.Supp. 1140, 1143 (E.D.Pa. 1983); *Gall v. United States Steel Corp.,* 598 F.Supp. 769, 773 (W.D.Pa.1984); and, most recently, *Grzyb v. New River Co.,* 793 F.2d 590, 592 (4th Cir.1986). This is also the accrual rule the Department of Labor supports. U.S. Department of Labor, *Veterans' Reemployment Rights Handbook,* 23–2 (1988). The rule applies whether or not the veteran knows in advance that his claimed pension benefits will not be paid. *Davis,* 383 F.Supp. at 893 (plaintiff knew in 1967, sued in 1972); *Letson,* 523 F.Supp. at 1225 (plaintiff knew in 1947, sued in 1979); *Grzyb,* 793 F.2d at 592 (plaintiff knew in 1946, sued in 1977). It applies to voluntary, contributory pension plans as well as to plans that are entirely funded by the employer. *Letson,* 523 F.Supp. at 1226–27.

We recognize that the rule may work some hardship on employers forced to defend claims brought long after the relevant events took place. United, for instance, threw away in 1961 its files relating to Leonard's 1948 withdrawal from the plan, during a spate of normal corporate housekeeping. But the interests of veterans weigh heavily in the scales: "[t]his legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need...." *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946); *Alabama Power,* 431 U.S. at 584, 97 S.Ct. at 2004–05. Further, the Department of Labor's construction of the Act is entitled to some measure of deference. *Dyer v. Hinky Dinky, Inc.,* 710 F.2d 1348, 1352 (8th Cir. 1983). We will not make new law here.

United argues that the accrual-at-retirement rule does not apply because Leonard cashed out of the Plan in 1948. Unlike the plaintiffs in the cases cited, Leonard accel-erated his pension rights and could have sued immediately upon his return from service. We do not find this argument persuasive. First, the cases cited do *not* depend on the proposition that the veterans involved were forced to wait until retirement to sue. In *Davis,* for example, the court expressly notes that the employee could have sued earlier under a theory of anticipatory breach of contract. 383 F.Supp. at 893. Second, whether or not he cashed out, Leonard ultimately seeks to have his years in the military credited to his existing pension. His right to the benefits he claims could not accrue until he retired.

■ Having decided that Leonard's cause of action accrued in 1981, we must still decide whether the six-year delay between 1981 and 1987 constituted laches. Although questions of laches are usually committed to the equitable discretion of the district court, *Lingenfelter,* 691 F.2d at 341, we find that we may resolve the issue without remand. Laches requires a finding of unreasonable and inexcusable delay by the plaintiff and prejudice to the defendant. *Id.* at 340. As an initial matter, we may exclude the time Leonard spent pursuing internal administrative remedies. Attempts to resolve a dispute without resorting to a court do not constitute unreasonable delay. *EEOC v. Vucitech,* 842 F.2d 936, 943 (7th Cir.1988). The remaining delay is attributable to the government. Courts have divided on the question whether governmental delay in pursuing a Veterans' Act claim should be charged against the veteran. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 807 (8th Cir. 1979) (collecting cases), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); *cf. Martin v. Consultants & Administrators, Inc.,* 966 F.2d 1078 (7th Cir. 1992). On the one hand, it is argued that it is unfair to the veteran to penalize him for the government's delay. *See, for example, Blair v. Page Aircraft Maintenance, Inc.,* 467 F.2d 815, 821 (5th Cir.1972) (Tuttle, J., concurring in part and dissenting in part). On the other hand, the veteran need not seek the government's assistance in bring-

ing suit, and the government's delay causes just as much prejudice to the defendant. *Goodman*, 606 F.2d at 807. We need not weigh the relative equities, however, since we find that United could not demonstrate prejudice from the government's delay.

There is no question that United lost significant evidence when it threw out its pension files in 1961. Memories have dimmed since 1953. But although United has argued that the delay between 1981 and 1987 constitutes laches, it has made no allegation that relevant evidence was lost during the period. Indeed, Leonard's pursuit of his claim starting in 1981 must have notified United that it should preserve whatever evidence it then had. Without prejudice to United, laches does not bar Leonard's claim.

Even the delay from 1953 does not prejudice United in the present posture of the case. The loss of documentary and testimonial evidence over the years might have hurt United in a trial on the merits.[2] But Leonard won on summary judgment. Like the district court before us, we will resolve all factual disputes and draw all inferences in United's favor. Even if we assume that United's version of events is completely accurate, Leonard still wins on the merits.

B. *Waiver*

■ Taking United's view of the facts, we must assume that in 1948 Leonard was presented with a choice. He could stay in the Retirement Income Plan and continue making contributions while in service; he could stay in the Plan, stop making contributions and make them up when he returned; or he could withdraw from the Plan and take his accumulated contributions with him. We may infer that this last option, not offered to employees going on other forms of leave, was based on United's perception that employees going on military leave might need the money. But United also warned Leonard that if he chose the third option, he would not be able to repay his contributions when and if he

returned. Leonard made a knowing and intelligent choice. If a soldier called to arms can waive his rights under the Veterans' Act, Leonard did so.

There is no question that veterans can waive their rights to reemployment and the perquisites of seniority after their return from service. *See O'Mara v. Petersen Sand and Gravel Co.*, 498 F.2d 896, 897 (7th Cir.1974). Further, the Eighth Circuit has held that a veteran may waive his reemployment rights by making a career in the military. *Smith v. Missouri Pacific Transp. Co.*, 313 F.2d 676, 681–82 (8th Cir. 1963) (Blackmun, J.). But although we have found no case law directly on point, we do not think that an employee can waive his rights under the Act *before* entering military service. *See Veterans' Reemployment Rights Handbook* at 22–2 ("In all but the most unusual circumstances, a veteran cannot expressly or impliedly waive his reemployment rights before or during military service.").

In *Fishgold*, the Supreme Court considered a union's claim that giving statutory reemployment and seniority rights to returning veterans would violate a preexisting collective bargaining agreement. The Court held that "no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." 328 U.S. at 285, 66 S.Ct. at 1111. That a union cannot contract away the rights of its members under the Act suggests that individual workers cannot waive their rights either.

As an initial matter, we do not think that Congress could have intended that employees would be able to waive their rights before entering military service. The purpose of the Act, as Magistrate Judge Rosemond noted, is "to minimize the disruption in individuals' lives resulting from the national need for military personnel." *Alabama Power*, 431 U.S. at 583, 97 S.Ct. at 2004. War is hell, and a call to arms is

---

**2.** United has not argued that Leonard's delay has significantly increased the cost of providing him with his pension benefits. Accordingly, we need not consider whether United's financial prejudice is sufficient to support a defense of laches. *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir.1988); *EEOC v. Vucitech*, 842 F.2d 936, 943 (7th Cir.1988).

harrowing. Faced with this unavoidable disruption in their lives, inductees may make choices that are sensible when death looms, but cease to make sense when they discover that they have survived. The reemployment rights provided by the Act are necessarily directed to the survivors, and Congress intended that they be able to return to civilian life as easily as possible. Veterans should not be burdened by the choices they make when called to arms.

## C. *Perquisite of Seniority*

■ Upon their return to civilian employment, veterans "shall be ... reemployed without loss of seniority [and] shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence." 38 U.S.C. § 2021(b)(1). More generally, a returning veteran "should be ... reemployed in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces...." § 2021(b)(2). Courts generally lump these rights together as a right to the "perquisites of seniority."

In *Alabama Power*, the Supreme Court created a two-prong test to determine whether a particular claimed benefit is a perquisite of seniority:

> If the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a "perquisite of seniority." If, on the other hand, the veteran's right to benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority....

431 U.S. at 589, 97 S.Ct. at 2007. The Court then applied this test and determined that pension benefits that did not vest until the employee had 20 years of service or had 15 years of service and had attained the age of 50 were a reward for length of service, reasonably certain to accrue. *Id.* at 590–94, 97 S.Ct. at 2007–09.

We have no trouble coming to the same conclusion with respect to Leonard's participation in the Retirement Income Plan. It is true that, unlike the pension plan considered in *Alabama Power*, participation in United's Plan was voluntary. But United does not really dispute that Leonard would have continued his participation in the Plan had he not been called to service: Leonard signed up for the Plan as soon as he could when he was hired and resumed his participation as soon as he returned. When he returned, he was already anxious to make up his lost contributions. The chance that Leonard would not have chosen to continue his participation in the Plan is no more significant than the chance in *Alabama Power* that Davis would quit his job. *Cf. Letson*, 523 F.Supp. at 1227–30 (deciding that employee could go to trial on theory that he *would have* begun to participate in voluntary pension plan had he not been inducted before he was eligible to participate).

Our conclusion is reinforced by the language of the Act. Returning veterans have the right to participate in benefit programs according to the same rules that apply to other employees on furlough or leave of absence. United allowed pilots who did not withdraw their contributions when they went into the military to make up their missed contributions when they returned. Leonard was not allowed to participate in the benefit program on the same terms only because United believed that he had waived his right to participate. We have concluded that a veteran cannot waive his rights under the Act before he enters the Armed Forces. Therefore, United should have allowed Leonard to participate on the same terms as returning pilots who did not withdraw their contributions.

## III.

Nothing in this opinion should be read to accuse United of bad faith; the company's position in this litigation appears to have been entirely reasonable. Nonetheless, we

conclude that United's view of its responsibilities under the Veterans' Act is mistaken. Accordingly, the judgment is AF-FIRMED.