# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2030

ROBERTS & SCHAEFER COMPANY,

*Petitioner*,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS and
WILLIAM L. WILLIAMS,

*Respondents*.

_____

Petition for Review of an Order of the Benefits Review
Board, United States Department of Labor.
No. 03-386-BLA

_____

ARGUED DECEMBER 8, 2004—DECIDED MARCH 14, 2005

_____

Before FLAUM, *Chief Judge*, and POSNER and SYKES,
*Circuit Judges*.

FLAUM, *Chief Judge*. An administrative law judge ("ALJ")
ordered petitioner Roberts & Schaefer Company ("R&S") to
pay benefits to respondent William L. Williams under the
Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901 *et seq.*
Following affirmance by the Benefits Review Board, R&S
petitioned this Court for review. For the reasons stated
herein, we affirm.

## I.  Background

Respondent Williams was a coal miner in the traditional sense for little more than three years but he worked in coal mine construction for much longer. Petitioner R&S employed Williams between 1974 and 1984 as a laborer, demolishing old tipples and other mining structures and repairing and building new ones. After 1984, Williams worked for other companies in various mining and non-mining jobs until he retired in 1991 at the age of 58. Williams was also a smoker. He quit in 1999 after smoking approximately one pack of cigarettes per day for 46 years.

Williams first received treatment for respiratory problems in 1991. Over the course of the next decade, he saw several different doctors about his worsening condition. One of the first doctors he consulted was Dr. Harold Johnson, whose notes, dating from 1991 to 1995, refer to a diagnosis of chronic obstructive pulmonary disease ("COPD"), but do not indicate the cause of the condition. In 1992, Drs. Mason Baker and Carroll Boyle, also without opining on etiology, each diagnosed Williams with emphysema.

In November 1998, Williams filed an application for pneumoconiosis benefits with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). Within a month, the OWCP's district director notified Amax Coal Company that it had been designated the responsible operator liable for the payment of any benefits due to Williams.[1]

---

[1]  The Secretary of Labor and the Secretary of Heath and Human Services are vested with the authority to promulgate regulations for the implementation and administration of the BLBA. *See* 30 U.S.C. § 936. The implementing regulations provide that a district director shall designate a "responsible operator liable for the payment" of a miner's pneumoconiosis benefits. 20 C.F.R.

(continued...)

In March of the following year, Williams saw Dr. Reynaldo Carandang who, after examining him and evaluating his employment and smoking history, concluded that Williams was totally disabled by COPD due to coal dust exposure and smoking. Despite Dr. Carandang's report, the OWCP denied Williams's claim three months later. Williams sought reconsideration through the modification procedure set forth in 20 C.F.R. § 725.310 in May 2000. In June, after determining that Amax Coal had been named in error, the district director notified R&S that it was the responsible operator in Williams's case. In November, the OWCP denied Williams's request for modification.

Understanding that Williams would not be precluded from filing another modification request, R&S sent him to be examined by Dr. Jeff Selby, who diagnosed COPD and asthma and opined that Williams's condition was caused by smoking and untreated asthma. He reasoned that, because Williams's lung function continued to deteriorate even after he retired, the COPD was not "at all related to coal dust exposure." Also noting that Williams was unable to smoke while working at the coal mines, Dr. Selby stated that, "[c]learly coal mines actually probably helped preserve this man's lung function, not allowing him to smoke while there, and this had a much more significant positive effect on his health, than whatever small amount of negative effect of breathing in coal mine dust may have had." This opinion was later contradicted by Dr. David Marder, who examined

---

[1] (...continued)
§ 725.410(a)(3). Generally, this is the owner or operator of a coal mine, or the independent contractor performing construction work at a coal mine, that most recently employed the miner for a cumulative period of not less than one year. *See* 20 C.F.R. §§ 725.491-725.497. Where there is no employer that qualifies as a responsible operator, a miner may receive benefits from the Black Lung Disability Trust Fund. 26 U.S.C. § 9501(d)(1)(B).

Williams and found him to be totally disabled by COPD "due in substantial part to coal dust exposure," and Dr. Robert Cohen, who concluded from a review of Williams's file that he was totally disabled by pneumoconiosis due to both coal dust exposure and smoking.

Williams requested that his claim for pneumoconiosis benefits be transferred to the Office of Administrative Law Judges and, on January 28, 2003, following a formal hearing, an ALJ granted modification and ordered R&S to pay BLBA benefits to Williams. The ALJ's decision and order were affirmed by the Benefits Review Board. R&S has petitioned this Court for review.

## II. Discussion

When a party appeals a final decision of the Benefits Review Board, "our task is to review the ALJ's decision which the Board affirmed." *Old Ben Coal Co. v. Director, OWCP*, 292 F.3d 533, 538 (7th Cir. 2002) (internal quotations omitted). "We do so under a deferential standard of review: We will not overturn the ALJ's decision if it is rational, supported by substantial evidence and consistent with governing law." *Id.* We affirm an ALJ's factual findings "if they are supported by relevant evidence that a rational mind might accept as adequate to support a decision." *Zeigler Coal Co. v. Director, OWCP*, 326 F.3d 894, 897 (7th Cir. 2003) (internal quotations omitted). "We do not reweigh the evidence, resolve inconsistencies in the record, make credibility determinations, or substitute our inferences for those drawn below." *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 478 (7th Cir. 2001). "Though we defer to the ALJ's factual determinations, we review questions of law *de novo*." *Gulley v. Director, OWCP*, 397 F.3d 535, 538 (7th Cir. 2005).

R&S asserts that Williams's claim for benefits is procedurally barred and, in the alternative, that the ALJ's decision is not supported by substantial evidence. We consider each assertion in turn.

## A. Procedural Bars

R&S argues that Williams's claim is barred by the BLBA's statute of limitations, the doctrine of laches, and the Due Process Clause of the Fifth Amendment to the United States Constitution.

The BLBA provides that any claim for benefits by a miner "shall be filed within three years after . . . a medical determination of total disability due to pneumoconiosis." 30 U.S.C. § 932(f). The implementing regulations recognize "a rebuttable presumption that every claim for benefits is timely filed," and add that the limitations period begins to run when "a medical determination of total disability due to pneumoconiosis" is "communicated to the miner." 20 C.F.R. §§ 725.308(a), (c). The term "pneumoconiosis" is defined in the BLBA as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

R&S attempts to rebut the presumption of timeliness by arguing that Williams must have the same disease now that he had in 1992 when he saw Drs. Johnson, Baker, and Boyle and, therefore, that the statute of limitations began to run upon the first diagnosis of COPD or emphysema by one of those doctors. In other words, if Williams's current condition was caused by coal dust exposure as the ALJ found, then the COPD and emphysema diagnosed in 1992 were also caused by coal dust exposure and Williams was required to bring his claim within three years of those original diagnoses. This reasoning, however, is based on a misinterpretation of the regulation. The limitations period does not begin to run until the claimant is informed either that his respiratory or pulmonary impairment is "pneumoconiosis" or that the impairment arose out of exposure to coal dust. It is undisputed that Dr. Carandang's 1999 medical report concluding that Williams's condition was

caused at least in part by exposure to coal dust was the first such determination to be communicated to Williams. Therefore, Williams's 1998 application for benefits is not time-barred.

Next, R&S claims that the equitable doctrine of laches bars Williams's claim. It contends that the lengthy gap between Williams's last day of employment with R&S and the filing of his claim compromised its ability to defend the action. A party who asserts a laches defense must show "an unreasonable lack of diligence by the party against whom the defense is asserted" and "prejudice arising therefrom." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). We will reverse a decision as to whether to apply the doctrine of laches only for abuse of discretion. *Id.* at 819. Given his finding that Williams was first diagnosed with pneumoconiosis in 1999 *after* he filed his claim, the ALJ correctly concluded that Williams could not have been expected to file a claim any earlier. The ALJ's finding of no lack of diligence is supported by substantial evidence and it was not an abuse of discretion to decline to apply the doctrine of laches to Williams's claim.

Finally, R&S contends that its procedural due process rights were violated by the OWCP's delay in notifying it of its potential liability as the responsible operator. R&S states that its ability to mount a meaningful defense was compromised by the delay and believes that it should not be prejudiced by the OWCP's error in initially notifying Amax Coal, rather than R&S. On this basis, R&S seeks to have liability transferred to the Black Lung Disability Trust Fund.

We have recognized the general proposition that "[t]here can be no due process without 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 690 (7th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Not every delay, how-

ever, will deprive a litigant of a meaningful opportunity to be heard. For instance, in *Midland Coal Co. v. Director, OWCP ["Kelly"]*, 120 F.3d 64 (7th Cir. 1997), the responsible operator alleged a due process violation where the miner filed his claim in 1976, the district director denied the claim in 1980, the miner died in 1982, and the district director notified the responsible operator of its potential liability two months after the miner's death. We held that the delay alone did not constitute a due process violation absent a showing that the employer had been unable to defend against the claim after the claimant's death.[2]

Here, the delay in notification was even shorter than in *Kelly* and R&S has not shown that it was denied a meaningful opportunity to defend against the claim. When R&S received notice of potential liability in June 2000, Williams had only recently obtained counsel and filed for modification of the district director's denial. After R&S was notified, two years passed before the ALJ's hearing, during which time R&S had the opportunity to subject Williams to a medical examination by its expert, obtain his medical records, serve interrogatories, and investigate his employment and medical history. These circumstances provided R&S with a sufficient opportunity to defend against the claim and its vague assertion that earlier notification might have enabled it to develop the case more fully does not make the delay unconstitutional. R&S has failed to demonstrate that liability must be shifted to avoid a due process violation.

---

[2] R&S argues that *Kelly* is inapplicable because it was based on a different regulation. Such a distinction is of no consequence, however, because regulations cannot abrogate, or authorize violations of, a party's constitutional rights. We held that the delay in *Kelly* did not result in a deprivation of due process and that holding properly guides our decision in this case.

### B. Substantial Evidence

R&S next argues that the ALJ's decision was not supported by substantial evidence. Under the BLBA, "benefits are provided to miners who are totally disabled due to pneumoconiosis." 20 C.F.R. § 718.1(a). A claimant is entitled to benefits if he establishes that: (1) he suffers from pneumoconiosis; (2) the pneumoconiosis arose at least in part out of his employment as a coal miner; (3) he is totally disabled; and (4) the pneumoconiosis contributes to his total disability. *See* 20 C.F.R. §§ 725.202(d), 718.202-718.204. R&S contends that there is insufficient evidence to satisfy the first two elements.

Chest x-rays, biopsies, and physicians' medical opinions are among the types of evidence that may be relied upon in determining whether a claimant suffers from pneumoconiosis. *See* 20 C.F.R. § 718.202(a). The record did not contain any biopsy evidence and of the 24 interpretations of 13 chest x-rays, 13 were negative for pneumoconiosis, 1 was positive, and 10 were silent. Although the ALJ concluded that this evidence did not support a finding of pneumoconiosis, he went on to find that the medical opinions of Williams's doctors did.

Contrary to R&S's assertion that it was unreasonable for the ALJ to overlook the negative x-ray interpretations in evaluating the medical opinions, the regulations expressly provide that pneumoconiosis may be determined to exist based on the judgment of a physician, notwithstanding negative x-ray evidence. *Id.* In addition to highlighting Williams's chest x-rays, R&S suggests that the ALJ's finding of pneumoconiosis may not stand because his assessment of the medical opinion evidence was unreasonable. Under the BLBA, pneumoconiosis is a "chronic dust disease of the lung." 30 U.S.C. § 902(b). Williams's doctors agreed that he suffered from a serious respiratory impairment but disa-

greed about whether his condition arose from exposure to coal dust. Drs. Marder and Carandang diagnosed COPD due substantially to coal dust exposure. Drs. Baker, Boyle, and Johnson each diagnosed COPD or emphysema but did not discuss etiology. Dr. Selby diagnosed COPD due to smoking and asthma, opining that Williams's worsening lung function in recent years could not be due to coal dust exposure because he was no longer working in or around coal mines. Finally, Dr. Cohen diagnosed pneumoconiosis due to coal dust exposure and smoking. In his analysis, Dr. Cohen addressed Dr. Selby's diagnosis of asthma and found it to be without merit because there had been no previous diagnoses of that disease, no treatment had been administered for asthma, and Williams had not responded to bronchodilators (medications commonly given to asthma sufferers that widen the air passages of the lungs).

In considering the medical opinion evidence, the ALJ gave less weight to Dr. Selby's opinion in part because it is contrary to the Department of Labor's recognition of pneumoconiosis "as a latent and progressive disease which may first become detectible only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c). Greater weight was assigned to Dr. Cohen's opinion because of his standing in the field, "substantial expertise," and "well-reasoned and well-documented opinion." The ALJ concluded: "In sum, the substantial weight of Dr. Cohen's opinion buttressed by those of Drs. Marder and Carandang outweigh the discounted opinion of Dr. Selby. Therefore, I find that the weight of the evidence of record supports a finding of pneumoconiosis." (Jan. 28, 2003 ALJ Order at 17.)

An ALJ does not exceed his authority in discounting a medical opinion that is influenced by the physician's "subjective personal opinions about pneumoconiosis which are contrary to the congressional determinations implicit in the Act's provisions." *Midland Coal Co. v. Director, OWCP*, 358

F.3d 486, 491-92 (7th Cir. 2004) (internal quotations omitted). Dr. Selby's medical opinion conflicts with § 718.201(c)'s recognition that pneumoconiosis can be latent and progressive, and his statement that coal mine employment "helped preserve [Williams's] lung function" and had a "positive effect on his health" is contrary to the congressional findings and purpose central to the BLBA. *See* 30 U.S.C. § 901(a). Because these are appropriate reasons to limit the weight assigned to Dr. Selby's opinion, and because the finding of pneumoconiosis is supported by substantial evidence, we will not disturb the ALJ's conclusion. The first requirement for receiving benefits remains satisfied.

As to the causation element, if a claimant was employed for ten years or more as a miner, there is a rebuttable presumption that his pneumoconiosis arose out of his coal mine employment. 20 C.F.R. § 718.203(b). A coal mine construction worker is deemed a miner to the extent he "was exposed to coal mine dust as a result of employment in or around a coal mine or coal preparation facility." 20 C.F.R. § 725.202(b). R&S contends that the ALJ's determination that Williams was exposed to coal dust for more than ten years, and thus entitled to the causation presumption, is not supported by substantial evidence.

The ALJ found Williams to be a credible witness and relied primarily on his testimony in calculating the length of his employment as a miner. The ALJ determined that prior to 1974, Williams worked for 3¼ years as a traditional miner and that he worked in mine construction for R&S and other companies from 1974 to 1984. The majority of his work was performed at actively operating mines with coal sifting and grinding occurring nearby. In addition, Williams testified that in tearing out the old beams and trenches from the tipples as part of the construction work, there was "dust flying all the time" and his face was black with coal dust by the end of the day. Although concrete dust also was

present, Williams testified that he could tell the difference between dust from coal and concrete. Based on these facts, the ALJ found that Williams worked for 13¼ years in coal mine employment.

R&S first attacks the ALJ's finding by asserting that it was unreasonable to credit Williams's testimony because it was contradicted by other evidence. It contends that Williams was incorrect in stating that the "biggest majority" of his work assignments were at functioning mines. In particular, R&S points to its own project 7515, where Williams was employed for almost 17 months from 1977 to 1979. R&S cites a former employee's testimony in a different case that R&S was building a new plant during this time and that the employees were not exposed to coal dust. The ALJ considered this evidence but found that it did not outweigh Williams's own credible testimony about his work experience. R&S asks us to second guess the ALJ's credibility determination and reweigh the evidence but, as stated above, we may not do so. *Freeman United Coal Mining Co.*, 272 F.3d at 478.[3]

R&S also argues that the ALJ should have discounted Williams's testimony that he regularly was exposed to coal dust because his claim that he was able to distinguish between coal and concrete dust was incredible. Williams explained that he could identify coal dust because it is of a darker color than concrete dust and has a different taste in the air. In addition, he recalled coal being run through the plants while he was working, having a face black with coal

---

[3] R&S contends that the documentary evidence establishes that Williams worked for only 7½ months, rather that a full year, between 1983 and 1984. Even if true, this would not bring the cumulative length of Williams's mine employment below the 10 years sufficient to trigger the presumption.

dust by the end of the day, and seeing "black stuff" when he blew his nose. Although R&S criticizes Williams's "taste test" as an "unfounded scientific theory," it points to no authority for the proposition that only scientific evidence is admissible to prove exposure to coal dust. It was appropriate for the ALJ to credit the firsthand observations of one experienced in working with and around coal.

R&S has not succeeded in undermining the ALJ's finding that Williams worked as a miner for more than ten years and therefore has not shown that the ALJ should not have employed the presumption that Williams's pneumoconiosis arose out of coal mine employment. Because R&S also has not rebutted the causation presumption, the second requirement for receiving benefits remains satisfied.

### III. Conclusion

Having held that Williams's claim is not procedurally barred and that the ALJ's findings are supported by substantial evidence that a rational mind could accept as adequate, we AFFIRM the award of benefits.

A true Copy:

   Teste:

                        _____
                        ***Clerk of the United States Court of***
                        ***Appeals for the Seventh Circuit***