# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-2911

JEROME MAHER,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 3421—**Jeffrey N. Cole**, *Magistrate Judge.*

ARGUED SEPTEMBER 17, 2008—DECIDED OCTOBER 31, 2008

Before MANION, WOOD, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Jerome Maher sued the City of
Chicago ("the City"), alleging, as pertinent here, that the
City wrongfully demoted him in 1991, 1993, and 1998[1] for

---

[1] Maher also claimed that he was not properly reinstated to his
former position in 1997 when he returned from active duty
in Bosnia and that the City failed to promote him from 1991

(continued...)

being absent from work while on active duty in the Naval Reserves, in violation of the Veterans' Reemployment Rights Act and its successor legislation, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). The district court granted summary judgment to the City on the 1991 and 1993 claims, and a jury decided the 1998 claim in favor of the City. On appeal, Maher contends that: (1) the district court wrongfully granted summary judgment to the City on his 1991 claim; (2) the district court abused its discretion by excluding evidence regarding the alleged demotions in 1991 and 1993; and (3) the evidence was insufficient to support the jury's verdict in favor of the City on the 1998 claim. We affirm the district court in all respects.

I.

Maher entered the Naval Reserves in 1987. In August 1990, Maher was hired by the City in its Aviation Department ("Aviation"). At the time of his hiring, Maher had a degree in accounting and was a practicing Certified Public Accountant. Maher contends that, during a pre-employment interview, the City told him that he would

---

[1] (...continued)
onwards while promoting other, less qualified individuals. Although the magistrate judge denied summary judgment to the City on those claims, only the failure to promote claim was submitted to the jury, which found in favor of the City. Because Maher has not raised either of these two claims in this appeal, they will not be discussed further.

be hired as an "assistant commissioner"; however, for budgetary reasons Maher's salaried position as it appeared in Aviation's records would be "Director of Development Finance," apparently a lower position than an assistant commissioner. Maher's initial yearly salary was $43,128, and his initial duties were to manage accounts receivable for Aviation and to develop a computer system for determining rates for billing airlines and concessionaires. In February 1991, Maher was called to active duty in the first Gulf War. Maher alleges that his supervisor, Jerome Smith, expressed displeasure with Maher's upcoming absence from work during his deployment. When Maher returned to work in September 1991, he was appointed "Director of Revenue" with a salary of $49,440. Smith allegedly continued to criticize Maher based on his military service and threatened to have him fired. Maher was also required to report to one of his former subordinates. On August 12, 1992, Maher filed a formal complaint with the Department of Labor ("DOL"), in which he alleged that he had been denied advancement and subjected to public humiliation because of his military service. However, after some negotiations, Maher withdrew the complaint in December 1992.

In 1993, Aviation was reorganized, and Maher was given a new title: "Manager of Finance." His salary increased to $54,840 per year, and he was given a larger staff to supervise. Following the reorganization, Maher's duties involved supervising revenue and billing activities for O'Hare and Midway airports. Also in 1993, the City moved Aviation to O'Hare. Furniture from other offices was placed in Maher's office, making his office unusable

for about a week. Maher alleged that, after the reorganization, another supervisor, Dwayne Hawthorne, harassed him by disparaging the military and stating that Maher was too old to serve in the military. Maher also claimed that another supervisor, Michael Cummings, stated that Maher's military commitments prevented him from "getting anywhere in this department."

In 1996, the Naval Reserves beckoned again; Maher was called into active duty to serve in Bosnia from August 1996 to May 1997. During Maher's absence, his sister, Maureen, who held his power of attorney, alleged that she was unable to secure Maher's paycheck for eleven weeks. Maureen also testified that she met with a city alderman and Commissioner Mary Rose Loney to discuss the paycheck problems, and that the alderman stated that Maher would never be considered for a promotion "as long as he's in the military." Upon Maher's return, Hawthorne initially refused to reassign Maher to his former duties. In 1997, Maher met with Robert Repel, a deputy commissioner who dealt with governmental affairs and legal issues, and complained about his treatment following his Bosnia deployment and the 1991 events. After this meeting, Maher was generally restored to his former responsibilities in July 1997, although two former members of his staff were assigned to work for Hawthorne.

Maher was subsequently transferred to the City's Landside Operations ("Landside") in January 1998. Landside is a division of Aviation that handles ground transportation operations at the City's airports. The

transfer was ordered by Commissioner Loney, who in the meantime had fired Hawthorne. At Landside, Maher developed a high-speed rail system for O'Hare, as well as an "intermodal facility" that would bring together bus and rail services. Maher was also in charge of securing funding for the ground transportation master plan, which would revamp parking lots, bridges, train platforms, and other aspects of the ground transportation system. The entire project was estimated to cost $500 to $600 million. In addition to these responsibilities, Maher handled contracts and billing for the airport's ground transportation components. Landside handled approximately $100 to $120 million in parking revenue yearly. Maher, as well as the other Landside employees, supervised snow removal from O'Hare parking lots in the winter. After his move to Landside, Maher no longer had any staff and had to perform his own clerical work. When Maher testified in 2007, his annual salary had increased to $103,000 per year in salary and benefits.

In 2003, Maher filed suit against the City. The complaint alleged that Maher suffered adverse employment actions on three occasions based on his military service: (1) in 1991, when he was not given the title of assistant commissioner; (2) in 1993, when he was given the title of manager of finance and again was not appointed an assistant commissioner; and (3) in 1998, when he was transferred to Landside. The parties consented to proceed before the magistrate judge. After the City moved for summary judgment on all of Maher's claims, the magistrate judge concluded that Maher had not created a genuine issue of material fact regarding the 1991 and

1993 claims and granted summary judgment in favor of the City. Specifically, the magistrate judge concluded that Maher had failed to produce evidence that he had been hired as an assistant commissioner and failed to produce sufficient evidence showing that any adverse action was motivated solely by his military commitments. Moreover, the magistrate judge concluded that laches would bar the 1991 claim, as the City had been prejudiced by Maher's delay in filing suit. However, the magistrate judge further held that Maher had created a genuine issue of material fact regarding whether his transfer to Landside in 1998 was motivated by his military service. The magistrate judge also granted a subsequent motion by the City to exclude evidence of the 1991 and 1993 incidents during trial. The 1998 claim went to trial, but the first jury was hung. A second jury found in favor of the City. Maher appeals, challenging: (1) the grant of summary judgment on the 1991 claim; (2) the exclusion of evidence at the jury trial regarding the 1991 and 1993 events; and (3) the jury's verdict on the 1998 claim.

## II.

### A.

Maher first claims that the magistrate judge erred by concluding that laches barred his 1991 claim. On appeal, however, Maher does not challenge the magistrate judge's alternative holding that Maher failed to create a genuine issue of material fact regarding whether he had suffered an adverse employment action in 1991. "'[I]n situations in which there is one or more alternative hold-

ings on an issue, we have stated that failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.' " *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001) (quoting *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998)); *see also Coronado v. Valleyview Pub. Sch. Dist.*, 537 F.3d 791, 797 (7th Cir. 2008) (noting that the appellant's claim failed because of his "failure to confront the district court's alternative holding"). Accordingly, by not challenging one of the two independent grounds for the magistrate judge's holding on the 1991 claim, Maher's assertion of error on the 1991 claim is waived.

Even if we considered Maher's laches claim on the merits, he cannot prevail. A district court may grant summary judgment on the basis of laches where "the facts necessary for determining whether the defendant suffered material prejudice are not genuinely disputed." *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003) (citing *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985)). A lower court's conclusion that laches applies is reviewed for an abuse of discretion. *Roberts & Schaefer Co. v. Dir., Office of Workers' Comp. Programs*, 400 F.3d 992, 997 (7th Cir. 2005) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)); *see also Autozone, Inc. v. Strick*, __ F.3d __, 2008 WL 4173019, No. 07-2136, slip op. at 20 (7th Cir. Sept. 11, 2008) (noting that "a district court's decision to apply the doctrine of laches is discretionary"). "A party who asserts a laches defense must show 'an unreasonable lack of diligence by the party against whom the defense is asserted' and

'prejudice arising therefrom.'" *Roberts & Schaefer*, 400 F.3d at 997 (quoting *Hot Wax*, 191 F.3d at 820). Maher argues that his delay in filing suit on the 1991 claim should be excused, based on his pursuit of remedies through the DOL (a complaint he decided to withdraw in 1992) and a 1997 meeting with a supervisor regarding his misgivings. We have previously noted that "'[a]ttempts to resolve a dispute without resorting to a court do not constitute unreasonable delay.'" *Hot Wax*, 191 F.3d at 823 (quoting *Leonard v. United Air Lines, Inc.*, 972 F.2d 155, 158 (7th Cir. 1994)). But that assumes the attempts to resolve are ongoing. Although any delay while the DOL complaint was pending was not "unreasonable," the clock resumed ticking once Maher withdrew the DOL complaint in 1992. Simply put, the eleven-year delay between his withdrawing the DOL complaint in 1992 and filing suit in 2003 provided ample grounds for the magistrate judge to conclude that the delay was unreasonable.

Maher falls back on his 1997 meeting with Repel during which he complained about the 1991 events and argues that this pursuit of internal remedies excused his delay. But that single intervention does not make his delay reasonable. Primarily, at that meeting he was complaining about his current position and conflicts with his supervisor. Maher waited five years after withdrawing the DOL complaint before raising these issues in 1997 with Deputy Commissioner Repel. In *Hot Wax*, the plaintiff had written five letters to the defendant over a three-year period to complain about the products and advertising of the defendant. We held that the plaintiff's

"sparse letter writing campaign can hardly be character-ized as a serious attempt to resolve its concerns re-garding [the defendant]'s products and advertising." *Hot Wax*, 191 F.3d at 824. Similarly, Maher's sole oral com-plaint, made five years after withdrawing his initial complaint and six years before filing suit, was not a reasonably diligent attempt to settle his dispute with the City through internal remedies.

Furthermore, the magistrate judge did not abuse his discretion in concluding that the City would have been prejudiced by the delay. Only one of the two employees who hired Maher in 1990—Jerome Smith—was deposed. Smith testified at his deposition that the details of Maher's title at the time of his hiring were "all kind of cloudy to [him]," and noted that he was unable to recall certain details because "it was a long time ago." Maher admitted that Jerome Smith was unable to recall the events of 1991 due to the passage of time."[I]n order to show prejudice from failed memories, a defendant must show both that the memories have faded and that the inability to recall information was caused by the plaintiff's delay." *Smith*, 338 F.3d at 734 (citing *EEOC v. Massey-Ferguson*, 622 F.2d 271, 275 (7th Cir. 1980)). Here, Jerome Smith clearly indicated that his memory had faded. Moreover, given the twelve-year delay between the 1991 events and the filing of suit in 2003, it was not an abuse of discretion for the magistrate judge to conclude that the inability to recall was caused, at least in part, by the length of the delay. *See id.* at 735 (concluding that "the passage of eight and one-half years" could be deemed "a contributing factor to . . . failed memories"). Accordingly,

due to Jerome Smith's lack of memory, the City was prejudiced by Maher's delay in filing suit.

In spite of the extensive lapse of time, Maher relies on *Leonard v. United Air Lines* to argue that his 1992 DOL complaint should have put the City on notice that a suit was forthcoming. Therefore, he claims the City bore the burden of maintaining records relevant to Maher's complaint for the next eleven years. *Leonard* offers no support for such a delay. In *Leonard*, the plaintiff filed an administrative complaint with United when his claim accrued. 972 F.2d at 157. When those administrative remedies proved unsatisfactory, the plaintiff promptly filed a complaint with the DOL. That complaint ultimately culminated in the Department of Justice filing suit on behalf of the plaintiff in 1987. *Id*. Thus, the plaintiff had a live complaint pending against United from 1981 until suit was filed in 1987. All the while, United was on notice of a possible lawsuit. In this case, however, after Maher withdrew his 1992 complaint with the DOL, he never renewed his earlier complaint with the City other than with the brief encounter he had with Deputy Commissioner Repel in 1997. Thus, as time passed the City had no actual notice that Maher was contemplating a lawsuit. Accordingly, the magistrate judge did not abuse its discretion in concluding that the City had been prejudiced by Maher's delay.

## B.

The case went to trial regarding the alleged demotion in 1998 when the City transferred Maher to Landside.

The first trial ended in a hung jury. Maher contends that during the second trial the magistrate judge erred by excluding evidence of the alleged demotions in 1991 and 1993. A district court's decision to exclude evidence is reviewed for an abuse of discretion. *Griffin v. Foley*, 542 F.3d 209, __ (7th Cir. 2008) (citing *Estate of Moreland v. Dieter*, 395 F.3d 747, 753 (7th Cir. 2005)). The ruling of the lower court may be reversed "only if no reasonable person would agree with the trial court's ruling." *Id*. at __ (citing *Snipes v. Illinois Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002)).

The magistrate judge did not abuse his discretion by excluding the evidence relating to the 1991 and 1993 incidents. First, neither of those claims of diminished duties five and seven years earlier had any bearing on whether Maher suffered an adverse employment action in 1998. Second, Maher contends that the 1991 and 1993 incidents indicate a pattern of hostility toward his military status, which would be relevant for demonstrating that his military service was a motivating factor for the 1998 transfer. The decision-maker responsible for the 1998 transfer, Mary Rose Loney, became commissioner of Aviation in 1996 and was not involved in the 1991 or 1993 incidents. Therefore, those prior incidents do not reflect upon Loney's motivations in 1998. *See Buie v Quad/Graphics, Inc.*, 366 F.3d 496, 508 (7th Cir. 2004) (noting that other employment actions undertaken by different supervisors failed to indicate whether specific adverse employment action was discriminatory). In fact, she testified that she wanted Maher in that department because of his background and expertise. Accordingly, a

reasonable basis existed for the exclusion of the 1991 and 1993 evidence, and the district court did not abuse its discretion.

## C.

Finally, we turn to Maher's appeal of the adverse jury decision regarding his 1998 transfer to Landside. Maher challenges the sufficiency of evidence, claiming that no reasonable juror could have decided the 1998 claim for the City, and he asks this court to vacate the verdict and remand "for further proceedings." Like Maher's first claim on appeal, this claim fails on procedural grounds. Maher did not move for judgment as a matter of law under Federal Rules of Civil Procedure 50(a) or (b), which "sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial." *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006). A failure to file a pre-judgment motion under Rule 50(a) prevents this court from reviewing the sufficiency of a jury verdict. *Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 827 (7th Cir. 2005). A party must also file a post-verdict Rule 50(b) motion to preserve a sufficiency argument. *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 938 (7th Cir. 2006) (citing *Unitherm*, 546 U.S. at 400-01). As the Court in *Unitherm* explained, "[a] postverdict motion is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can

impart.' " *Unitherm*, 546 U.S. at 401 (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 216 (1947)). Thus, Maher's failure to bring a pre-verdict motion for judgment as a matter of law under Rule 50(a) or a post-verdict motion under Rule 50(b) dooms his challenge to the sufficiency of the evidence, a point which Maher's attorney conceded at oral argument.

Nonetheless, even if we were to consider the merits of Maher's appeal, he has failed to demonstrate that the verdict should be vacated. Maher bears a "heavy burden" in making such a claim: he must demonstrate that "no legally sufficient evidentiary basis" existed for the jury's verdict. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004). "We are obliged to leave the judgment undisturbed unless the moving party can show that 'no rational jury could have brought in a verdict against [him].' " *Id*. (quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 745 (7th Cir. 1994)). Under USERRA, Maher must demonstrate that he suffered an adverse employment action and that the adverse action was motivated in part by his military service. 38 U.S.C. §§ 4311(a), (c)(1); *see also Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002) (stating that USERRA is violated when an employee is "den[ied] a benefit of employment," and the employee's military service "is a motivating factor" for that denial).

Maher first argues that he suffered an adverse employment action because: (1) he did not have a staff at Landside; (2) he was not using his CPA qualifications; (3) he had no opportunity for advancement; (4) one of

his superiors at Landside had less college education than he; and (5) he was required to manage snow removal. However, other evidence presented at trial cut against Maher's claims and provided a basis for a reasonable juror to decide in the City's favor. "A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quotations omitted). An adverse employment action of the type alleged by Maher should be "distinguished from cases involving a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance." *Id.* (quotations omitted). Here, Maher managed large-scale projects such as a ground transportation overhaul that involved applying for and managing hundreds of millions of dollars, and handled millions of dollars worth of billing while at Landside. From this evidence, a reasonable juror could conclude that Maher was using his financial background. Although the lack of staff may be suggestive of less responsibility, that fact alone is not dispositive. Furthermore, Loney testified that Maher could have advanced in Aviation from Landside. Moreover, the fact that one superior had less college education than Maher does not indicate that Maher suffered an adverse employment action; otherwise, a company would have to ensure that its employees were placed on the company ladder in a strict educational hierarchy. Finally, the fact that Maher was *managing* snow removal—and was not plowing snow himself—does not demonstrate a lack of responsibility, especially in light of his other duties. For these

reasons, Maher has failed to prove that the evidence so favors his position that no reasonable juror could conclude otherwise.

Similarly, Maher has failed to show that a reasonable juror could only have found that hostility toward his military service, and not some other non-discriminatory reason, lurked behind the Landside transfer. Maher makes several arguments about peers being promoted ahead of him, disparaging remarks, delays in pay while he was in Bosnia, and furniture stored in his office during a move. However, these facts do not mandate a decision for Maher. The salient point here is that Commissioner Loney transferred Maher. Maher has not cited evidence indicating that she was responsible for promoting the other employees instead of him. "'[W]hen two different decision-makers are involved'" in separate employment actions, "'it is difficult to say that the difference [between the actions] was more likely than not the result of intentional discrimination.'" *Buie*, 366 F.3d at 508 (quoting *Timms v. Frank*, 953 F.2d 281, 287 (7th Cir. 1992)). Accordingly, the promotions of other employees do not provide sufficient evidence to overturn the jury verdict. Similarly, the disparaging comments made by Hawthorne (whom Loney fired for unrelated reasons) and Smith are irrelevant to Maher's claim. Finally, Maher is quick to make conspiratorial inferences concerning the problems receiving his checks and the furniture placed in his office during the move to O'Hare. However, a reasonable juror could conclude that these isolated incidences, totally unconnected with Loney's decision to transfer Maher to Landside, simply constituted petty nuisances,

instead of an overarching scheme to punish Maher for his military service. Simply put, the jury had an opportunity to draw the same inferences Maher does; the jury did not, and there is no compelling reason to conclude that the jury erred. Accordingly, Maher's challenge to the sufficiency of the evidence fails.

### III.

Because Maher only appealed the magistrate judge's conclusion on the laches issue and failed to appeal the alternative conclusion that no genuine issue of fact had been created regarding the 1991 claim, and because in any event the decision that laches barred the 1991 claim was not an abuse of discretion, the grant of summary judgment for the City on the 1991 claim is AFFIRMED. Moreover, because the decision to exclude evidence of the 1991 and 1993 claims at the trial of the 1998 claims was not an abuse of discretion, that decision is AFFIRMED. Finally, because Maher failed to bring pre- or post-verdict motions under Rule 50(a) or (b), and because in any event the evidence was sufficient to support the jury verdict on the 1998 claim, that verdict is AFFIRMED.